BARCROFT *v.* ARMSTRONG.

(In Banc.  April 23, 1945.)

[21 So. (2d) 817.  No. 35798.]

Farish, Keady & Branton, of Greenville, and Brandon, Brandon & Hornsby, of Natchez, for appellants.

**Engle & Laub,** of Natchez, and **Wells, Wells & Newman,** of Jackson, for appellee.

Argued orally by **William Keady** and **Gerard Brandon**, for appellant, and by **C. F. Engle**, for appellee.

**Alexander, J.,** delivered the opinion of the court.

Action was begun by Armstrong to enjoin foreclosure of his deed of trust in favor of the Alliance Trust Company, Limited, for accounting and for damages ex delicto, resulting from an alleged defamation. No point seems to have been made of the rather unique joinder of an ·unliquidated claim for damages with a bill for an accounting against which balance any award was to be credited. The defendants were P. B. Barcroft, individually and as trustee in the deed of trust, C. F. Williams, an agent of the defendant Alliance Trust Company, Limited, who is beneficiary, and the two newspapers who published the allegedly defamatory matter, the Natchez Democrat Printing & Publishing Company, Inc., and the Woodville Republican.

The deed of trust covered some twenty thousand acres of land, and was executed to secure payment of an indebtedness of $150,000. This amount was represented by

seven principal notes of $15,000, each due annually, beginning January 1, 1923, and one note for $45,000, due January 1, 1930. Six per cent interest notes were given, payable annually and computed upon principal balances due. These notes bore eight per cent interest after maturity. Due to an error in including in the deed of trust some lands not owned by mortgagor, a credit of $25,000 upon the debt was allowed.

Preliminary injunction issued at once restraining any advertisement or other proceedings toward foreclosure. Many issues were raised by the pleadings, which may be briefly summarized. Armstrong alleges that the balance due is less than that claimed by the mortgagee or beneficiary; that such balance is to be computed in the light of an alleged agreement with mortgagee to reduce the interest rate to six per cent; that the attempted foreclosure was premature, was for an excessive amount and contemplated foreclosure of lands not properly part of the security; and that because of the error in including lands not mortgaged nor owned by complainant, a correction notice was published in the aforesaid newspapers which, by indicating that such lands should not have been included in the deed of trust, implied a charge of false pretenses or fraud by mortgagor with resultant damages.

Answers denied the bases for injunction and the account as set out by complainant and the agreement to modify the contract rate. C. F. Williams disclaimed any interest in any balance due by Armstrong. Alliance Trust Company filed cross-bill praying a statement of the account, fixing the principal balance due at $43,861.39, with eight per cent interest thereon from January 1, 1933, and ten per cent attorneys' fees, and for foreclosure of its deed of trust.

Upon final hearing the Chancellor fixed the balance due as of May 31, 1944 at $52,082.10, with interest thereafter at six per cent, and ten per cent attorneys' fees; awarded damages in the sum of $12,000 by way of credit against such balance and on account of the "wrongful and in-

tentional breach by defendants of the contract to release from the deed of trust'' the property erroneously included therein; fixed the interest of C. F. Williams in the balance due at .09375%; made perpetual the injunction in so far as it involved the lands not owned and dismissed it as to the lands property included and decreed foreclosure on that basis. Decree ran against Alliance Trust Company, Limited, P. B. Barcroft, trustee, and the estate of C. F. Williams, since deceased. The appeal involves the correctness of the stated balance due by Armstrong which, of necessity, requires examination of the alleged agreement to reduce the interest rate; the award of damages for defamation and the refusal of the court to award damages to appellants upon dissolution of the injunction.

Certain collateral issues may be here disposed of before we discuss the foregoing assignments. In his answer C. F. Williams disclaimed any interest in the indebtedness to Alliance Trust Company, Limited. We find no reason to uphold a finding to the contrary. Armstrong set up defensively the statute of limitations against the entire debt. The mortgagee pleads an agreement executed by it and Armstrong, dated December 11, 1935, extending the maturity of the principal and interest until July 1, 1936. Its avowed purpose was ''to extend the maturity of the indebtedness so that the same shall not be barred by the statute of limitations.'' The considerations of forbearance and benefit to Armstrong are too substantial to be now attacked by him. Moreover this agreement was the subject of litigation between the parties in Alliance Trust Company, Ltd., v. Armstrong, 185 Miss. 148, 186 So. 833, and judgment therein sustaining its validity is now conclusive. Denial of this plea is the basis of a cross-appeal by Armstrong, on which point the Chancellor is affirmed. We now return to the chief assignments of error.

*The Oral Agreement to Reduce Interest Rate.* An examination of this issue of necessity precedes calculation

of the balance due since it is its chief basis of computation. Appellee testified that he interviewed one Jones, an agent of the mortgagee, in 1924, explaining his bankrupt condition, the heavy expenses of taxation, and the interest burden; that he would secure assistance in paying the taxes and ''would take care of the situation.'' Jones having died, appellee's testimony was all that was adduced on this point. He testified that in reply to his proposition to extend all notes past due and to reduce the rate to six per cent until the last note matured, January 1, 1930, ''Jones said that it was all right.'' It is further stated that some time later Jones wrote him ''a letter of confirmation.'' Such letter was not introduced and its absence is not fully accounted for, nor is its substance reproduced. However, appellee stands upon the oral agreement.

Since such alleged agreement is attacked for want of consideration, we exhibit the complete testimony on this point:

''Q. What was the consideration for the making of that agreement by Mr. Jones?

''Mr. Farish: We object to that.

''The Court: Overruled.

''A. The consideration was that he would have the taxes taken care of; he would not have the property that brought in no income and for himself to pay the taxes; the taxes were paid.

''Q. Who paid the taxes? A. Mr. Kirby paid the taxes; I had no money with which to pay them.

''Mr. Farish: We object to that for there was no consideration shown.

''The Court: Ruling reserved.

''Q. At that time you had been discharged from this debt personally? A. I had.

''Mr. Farish: We object; the record would be the best evidence.

''The Court: Sustained.

"Q. Was there any agreement on your part to assume personal liability?

"Objection to—Objection sustained.

"Q. What was the agreement? A. That I would undertake to handle the property with Mr. Kirby's help, and I could get that help if he would make the extension I would take care of the situation.

"Mr. Brandon: We object and move to exclude; there was no consideration for the alleged agreement.

"The Court: Ruling reserved.

"Q. Now was this after you had been throughout bankruptcy? A. It was.

"Q. Your bankruptcy was in 1923? A. Yes, sir, and I got a discharge promptly, within two or three days after filing my petition; I take that back . . .

"Q. The date of your discharge is here in the record? A. Yes sir.

"Q. Now as I understand, under that agreement you were to have Mr. Kirby to pay the taxes? A. Yes sir.

"Q. They were how much? A. The taxes were between five and six thousand dollars a year.

"Q. And to assist you in the paying of the interest? A. That was the consideration. The consideration was, I was to take the property and carry the loan and the interest.

"Q. And it was to be your personal debt? A. The whole thing was mine.

"Objected to—Sustained."

The agreement is further attacked as within the statute of frauds and as being insufficiently established as a fact. In view of the subsequent dealings between the parties extending over several years during which the appellant demanded and the appellee paid interest at eight per cent and the repeated reference in correspondence that the rate thus remained, we find no warrant for the chancellor's finding that the agreement was mutually agreed upon. Yet we, upon equally firm ground, find that the agreement, if made, was without con-

sideration. Armstrong was already obligated to pay the taxes and to "take care of the situation." Kirby was no party to any agreement with Jones nor, so far as the evidence shows, to any with Armstrong. At the time, Kirby held legal title to the property by deed from Armstrong to secure the former for a substantial indebtedness. Payment of an existing legal obligation may not be made a consideration for a new agreement to discharge it.

It is seen that intimation is made that because of an alleged discharge in bankruptcy Armstrong was no longer personally liable, and hence his resumption of such liability was a sufficient consideration. In this connection we need not examine the bankruptcy proceedings which, together with proceedings in numerous other litigations, have been incorporated into an already complicated record, since if he had not been discharged, he was still bound, and if he had been thus acquitted, his undertaking would run afoul of the statute of frauds. We place our decision, however, upon lack of consideration, more especially since the rather vague intimation of personal assumption was excluded by the court.

*Computation of the Balance Due.* The chancellor's finding was based upon the audit of the witness Mayhew. These computations were made upon the assumption that the alleged agreement to reduce the interest after maturity was in force. It is unnecessary to make further criticism of his account.

The witness, Haxton, an auditor, used as a basis of the computation the principal balance represented by the last principal note of $45,000, due January 7, 1930. Appellant agrees that all interest was paid to January 1, 1933, and it is established that because of a credit upon the said principal note its balance was $43,861.39. Upon this balance the witness computed interest at eight per cent. In spite of certain credits to principal instead of past-due interest, all of which though favorable to ap-

pellee is accepted by appellant, and after readjustment of minor credits and debits disputed by appellees, the testimony revealed a balance due of $80,909.06, which, together with ten per cent attorney's fees, effects a total due of $88,999.97 as of September 22, 1943. Details of the computation are not set forth. We do not understand that appellee contests the computations as such. We find, therefore, that the chancellor was in error in decreeing the balance otherwise, and we now enter decree for the amount just shown.

*The Damages Credited upon Defamation Issue.* The issue has reached us unchallenged by any procedural objection and our concern is not how it came to be adjudicated, but whether the finding is correct.

As above stated, when the deed of trust was executed by Armstrong and his wife, it included lands not owned by him. There seems to be no evidence as to whose error this was. It is argued that the borrower assumed the duty of furnishing a list of lands to be examined and accepted, and that he executed the deed of trust with the lands included. This, however, is mere commentary, and we do not fix responsibility for the initial error.

Armstrong seeks to relate his damages both to an alleged breach of contract to exclude the lands from the deed of trust and to the alleged libel by implication found in a published notice correcting the advertised foreclosure. This notice is as follows:

"Notice to the Public

"As Attorneys for the Alliance Trust Company, Limited, and P. B. Barcroft, Substituted Trustee in the deed of trust executed by George W. Armstrong and wife to the Alliance Trust Company, Limited, in 1919, we had posted and published notice of sale under said deed of trust, which notice was published on June 15th and 22nd, 1940, said notice including the Ormonde Plantation and a certain portion of the Ward Carson tract, both in Adams County, Mississippi, said land being included in the description in the deed of trust, the said two tracts of

land being owned by James P. Butler and Mrs. Laura Finley Butler, and they should not have been included in the deed of trust or notice of sale. We have stopped further publication of the notice of sale in order to eliminate said land. (Signed)

> "Farish, Keady & Branton, Attorneys for Alliance Trust Company, Limited, and P. B. Barcroft, Substituted Trustee."

The testimony on this point is directed to the notice of correction, since the error is publicly revealed only thereby. There is no evidence that the erroneous inclusion of the lands in the deed of trust provoked any attention of the public. Had it done so, the release dated February 23, 1920 would have disabused any unwarranted public suspicion by its recital "whereas by error there was included in said deed of trust the following lands which the said George W. Armstrong does not own and did not intend to include therein . . . " Appellee stated specifically "I am not accusing Smith and Perkins (appellant's agents) of any bad faith; I am complaining about the advertisement." Moreover, a release correcting the deed of trust and reciting a $25,000 credit upon the indebtedness was duly executed February 23, 1920, and filed for record. The testimony on this point was directed only to the effect of the printed notice. We must, therefore, view the claim as one ex delicto for defamation. The target of appellee's attack is the following language: "They (the Ormonde and Ward Carson tracts) should not have been included in the deed of trust or notice of sale." It is of interest that the learned chancellor in referring to this phase resorted to the identical allegation in characterizing the error. Appellee's attorneys shortly after this incident, published a full explanation of the matter in exoneration of their client, and fixing blame upon appellants. If such language is libelous, it is elemental that it be both defamatory and false. Putting aside the rather doubtful contentions (1) that the mortgagee caused the lands to be included, and (2) that

the necessary or probable implications of deliberate criminal intent are present (Taylor v. Standard Oil Co., 184 Miss. 392, 186 So. 294), we examine whether there is falsity or misrepresentation in the notice. Certainly, it is true that the lands were included in the deed of trust and that they ought not to have been.

This is not a case where the matter alleged as a fact is untrue. The lands were, in fact, part of the security tendered. It is only the purpose of their inclusion which is open to consideration. Assuming that the members of the public who were quoted by complainant's witnesses (who themselves disavowed any impairment of reputation in their own minds) inferred a criminal purpose on Armstrong's part, such inference necessarily includes the assumption that complainant caused the lands fraudulently to be inserted. If the mistake was Armstrong's, he must bear the risk of unfavorable deductions, especially those which are inventions or hypotheses advanced by those responsible for its repetition; if the error was conceived by the public to have been that of the mortgagee, they could and would attribute no sinister purpose to Armstrong.

The case is entirely different from Conroy v. Breland, 185 Miss. 787, 189 So. 814, where the mortgagee deliberately and without authority inserted into the executed mortgage certain personal property and later demanded possession of this property from third parties. This Court held that the mortgagee's assertion that it had a valid deed of trust was false, and known by it to be false. We say again that responsibility for the initial error is not shown. Particularly is it not shown that the appellant either prepared the list of lands or deliberately included the wrong lands. The attorney who published the correction notice testified that he was not aware of the error, was entirely without malice or intent to impute wrongdoing to Armstrong. The action here may not be related to events occurring prior to the above notice. Any libel must be predicated upon and tested by the notice itself.

We intend no discount of the importance of this issue by our summary statement that this publication made in good faith and which was required in the interest of appellee himself, stated only that which was true. We are of the opinion that a decree in favor of appellee for $12,000 based upon the foregoing grounds was error and must be reversed.

*Damages under the Injunction Bond.* Appellant contends that the chancellor ought to have awarded damages of five per cent under Code 1942, Section 1352, since the bill sought injunction against foreclosure of the deed of trust and proper suggestion of damages was made. Appellee answers that the injunction was dissolved only so far as it involved the lands properly belonging to him but that it was made perpetual as to the lands erroneously included in the deed of trust. The appellant meets this view with the charge that there was no basis for injunctive relief since it was not threatening to sell the unauthorized lands and had by its formal exclusion of these lands from the notice of foreclosure manifested its purpose, prior to the filing of the bill against it, to limit the sale to the remaining lands.

Both parties agree that the value of the lands exceeded the amount of the debt. The bill of complaint alleges that certain lands, including the Ormonde, Laurel Hill, Beck Dower, and Hamilton tracts, were not owned by Armstrong. The answer asserts that the defendants "did release from the deed of trust the lands it knew that the complainant did not own." The release hereinbefore referred to released the Carson, Laurel Hill, and Ellis Cliffs tracts. Armstrong, in response to the inquiry as to what lands not his own were included, testified: "You stated them this morning. I don't know that I can state them all; I understand that Ormonde was included and a place owned by Mrs. Anders—I forget what they call that tract—the Hamilton Tract"; also that he did not own the Beck Dower lands. The release, above referred to, set

forth several tracts as excepted from the deed of trust. To these excepted parcels there were in turn further exceptions which restored portions again to the instrument. This confusing catalog of exceptions is copied in the trustee's notice of sale. As to these descriptions, counsel for appellant state: "Frankly, this release does not clearly describe what specific lands were being released." Over objection an affidavit of such counsel was introduced, which stated in part: "Notwithstanding the effort of The Alliance Trust Company, Ltd., to release from said deed of trust all of the land not owned by George W. Armstrong, there still remained in said deed of trust unreleased several tracts of land which evidently were included through error of some one but how the error occurred affiant does not know; that upon this discovery affiant realized the sale would be void if made and he voluntarily stopped the publication of the notice of sale, and no sale was made or attempted to be made; that affiant then prepared a new notice of sale, leaving out all land not owned by George W. Armstrong, but before he could have the same published, or posted, the injunction was issued restraining the publication thereof." Said counsel further testified "I wanted to know (how the error occurred) because I had to know before I published another notice that I had the proper land described in the notice of sale."

The published notice of correction conceded error only as to the Ormonde and Carson tracts. The decree of the chancellor found that appellant "undertook to execute a release, releasing from the coverage of the said deed of trust the plantations of land included therein which were not owned by said George W. Armstrong . . . which release so executed did release some but not all of the said plantations so erroneously inserted in said deed of trust." Said decree retained the injunction as to "the Ormonde Plantation, Beck Dower Plantation, Hamilton Tract and other tracts not owned by complainant" and again "decreed that the injunction heretofore issued in this cause

be and the same is continued in full force and effect as to all of the lands described in the deed of trust which did not belong to complainant.''

It is seen, therefore, that the chancellor found, and upon substantial evidence, that not all the lands not owned by mortgagor had been deleted from the deed of trust. Only two tracts were conceded by the correction notice to be erroneously included. We find no warrant for overturning the chancellor's finding that the proposed foreclosure would include lands not owned by the mortgagor and his retention of the injunction against such contingency. We see no support for a contention that appellant had acted or would act in respect thereto in malice, bad faith, or under deliberate error. Statutory damages under the injunction bond are accordingly denied.

The litigation between these parties has been protracted and varied, extending through both state and federal courts for many years and has been characterized by a prolixity and persistence which has evoked a resourcefulness in defense commensurate with the issues at stake. The record is voluminous, containing, as it does, the integrated records in former litigation. The evidence is complex as is inevitable where prolonged accounting is required and multiple issues involved. An omission properly to index the testimony and some of the briefs in disregard of Rule 7 has retarded our progress toward the truth. The increased demands upon judicial energy and zeal have not, however, overdrawn our patience, and we have examined every issue with care.

The decree of the trial court will be reversed and decree entered here in favor of appellants in the sum of $80,909.-06 as of September 22, 1943, together with attorneys' fees thereon in the sum of $8,090.91, or a total as of said date of $88,999.97.

Reversed on direct appeal and decree here for appellants. Affirmed on cross-appeal.