MAXWELL, J.,
for the Court:
¶ 1. This appeal hinges on what “furnishings” transferred to Stuart and Jean Ae-gler when they purchased Francis Gam-brell’s house. The chancellor granted summary judgment in favor of Gambrell and awarded her possession of a list of items the Aeglers had refused to allow her to remove from the home after closing. Finding the addendum to the sales contract is clear that the claimed items were not included in the purchase of Gambrell’s home, we affirm the chancellor’s grant of summary judgment in favor of Gambrell.
FACTS AND PROCEDURAL HISTORY
¶ 2. Gambrell and the Aeglers were next door neighbors until separate emergencies drove Gambrell out of her home and the Aeglers into Gambrell’s. In April 2007, Gambrell’s children discovered she was in need of immediate medical care. They removed her from her home in Diamond-head, Mississippi, first to a hospital, then permanently to her daughter’s home in Indiana. All her belongings remained in Diamondhead. On June 1, 2007, Gambrell gave her son Michael power of attorney to sell her home. Michael hired a real estate agent and filled out a property disclosure statement, which disclosed a previous termite infestation.
¶ 3. On June 14, 2007, lightning struck the Aeglers’ house, sparking a fire that consumed the house and everything in it. Homeless and with little amenities, the Aeglers asked Michael if they could move into his mother’s furnished house.
¶ 4. Michael agreed but informed them his mother was trying to sell the house. On June 27, a week and a half after moving in, the Aeglers made an offer on the house. After two days and two counter offers, on June 29, Michael and the Ae-glers agreed on a purchase price of $310,000. The contract they entered stated the Aeglers were purchasing “7616 Fairway DR, Diamondhead, MS together with the following items: appliances as in place at time of offer [and] all items permanently attached, unless specifically excluded herein.” The contract included the following addendum, drafted by Gambrell’s realtor: “Seller reserves right to remove certain articles prior to closure and all other remaining furnishings are to remain with the house.”
¶ 5. The sale was to close on September 1, 2007. Realizing his mother’s health would prevent her from returning to Mississippi to retrieve her property before closing, Michael called Stuart, who assured *241 Michael that Gambrell could come get her things after closing.
¶ 6. The house closed without the Ae-glers having an inspection. Several months later, Gambrell’s daughter called the Aeglers to arrange a time for movers to come and remove Gambrell’s property. The Aeglers said they would ship Gambrell her jewelry, photographs, golf trophies, and personal items belonging to her late husband. But they informed her daughter they now owned everything in the house.' Further, the Aeglers could not send Gam-brell’s clothes because they had already been donated to a local charity.
¶ 7. A dispute erupted over which “furnishings” belonged to whom. The Aeglers argued the main reason they bought the home is because it came furnished. They also expressed dissatisfaction with their newly purchased home. In particular, they were upset the termite damage had not been repaired and that Gambrell had not given them, as Michael indicated she would, her insurance proceeds to repair the smoke damage caused by the Aeglers’ house fire. The Aeglers said they would return all the personal property-along with the house — if Gambrell agreed to rescind the June 2007 contract. If not, she would not get a single item of personal property.
¶ 8. In November 2007, Gambrell sued the Aeglers for breach of contract, asking the chancery court to enforce her right to retrieve certain personal property, a list of which she attached to her complaint. The list included clothing, jewelry, photographs, golf trophies, wall plaques, Christmas decorations, dishes, throw pillows and blankets, small appliances, pieces of furniture, and a golf cart.
¶ 9. The Aeglers denied they had breached the contract and filed a counterclaim. They asked the chancery court to rescind the contract claiming that buying Gambrell’s furnishings was a key reason they purchased the home for $310,000. The Aeglers also asked for the costs associated with buying and maintaining Gambrell’s home (closing costs, taxes, and insurance), $5,000 for needed termite-damage repair, and any insurance proceeds Gambrell received for damage from the June 2007 fire next door.
¶ 10. Gambrell moved for summary judgment in her favor on all claims and counterclaims. Because the material facts were undisputed and because this case hinged on a legal question — the interpretation of the addendum to the contract — she argued summary judgment was appropriate.
¶ 11. The chancellor agreed and granted summary judgment on Gambrell’s request for the listed items of personal property[1] and dismissed the Aeglers’ counterclaims. The chancellor found there was no dispute the parties agreed Gambrell could remove her property after the closing. She also found the addendum’s language, in particular “remaining furnishings,” was unambiguous. The Ae-glers had argued “remaining furnishings” encompassed all the furnishings Gambrell had left in the house. But the chancellor found the only logical reading of the addendum is that it allowed Gambrell to remove some of the furnishings. Further, as a matter of common sense, the chancellor reasoned “furnishings” could not include some items the Aeglers had claimed they now owned, like Gambrell’s golf cart.
¶ 12. The Aeglers filed a motion to reconsider, arguing the chancellor failed to *242 apply the dictionary definition of “furnishings.” They also asked the chancellor to clarify the basis for dismissing their counterclaim. The chancellor denied the Ae-glers’ motion to reconsider and explained their counterclaim failed because service was defective.
¶ 13. The Aeglers timely appealed.
LAW
¶ 14. We conduct a de novo review of a trial court’s grant or denial of a motion for summary judgment. Lewallen v. Slawson, 822 So.2d 236, 237 (¶ 6) (Miss.2002) (citation omitted). Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c).
¶ 15. In determining whether the trial court properly granted summary judgment, we view the facts in the light most favorable to the nonmovant. Robinson v. Singing River Hosp. Sys., 732 So.2d 204, 207 (¶ 12) (Miss.1999) (citation omitted). Summary judgment must be granted when the nonmoving party “fails to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial.” Borne v. Dunlop Tire Corp., 12 So.3d 565, 570 (¶ 16) (Miss.Ct.App.2009) (citing Grisham v. John Q. Long V.F.W. Post, No. 1057, Inc., 519 So.2d 413, 416 (Miss.1988)). To withstand summary judgment, the nonmoving party must produce significant probative evidence showing there are genuine issues for trial. Id. (citing Price v. Purdue Phanna Co., 920 So.2d 479, 485 (¶ 16) (Miss.2006)).
¶ 16. “Questions concerning construction of contracts are questions of law.” Henry v. Moore, 9 So.3d 1146, 1152-53 (¶ 15) (Miss.Ct.App.2008) (citing Parkerson v. Smith, 817 So.2d 529, 532 (¶ 7) (Miss.2002)). Our courts approach contract interpretation as follows:
When examining a contract, a court should first examine the four corners of the contract to determine how to interpret it. If the language in the contract is clear and unambiguous the intent of the contract must be effectuated. Vagueness and ambiguity are more strongly construed against the party drafting the contract. Only when the intent of the parties is not clear the Court should then resort to extrinsic evidence.
Rotenberry v. Hooker, 864 So.2d 266, 270 (¶ 14) (Miss.2003) (citations omitted).
DISCUSSION
¶ 17. Both parties agree the chancellor correctly applied the “four-corners” test to interpret the contract and addendum. But they disagree with her definition of “furnishings” and her finding the contract was unambiguous. We are not persuaded the Aeglers’ asserted definition of “furnishings” — the movable items in a house, including furniture, that make the house livable — dictates a different outcome. Thus, we affirm the chancellor’s award granting Gambrell her personal property because the addendum is clear that the ownership of these items was not intended to transfer to the Aeglers with the sale of the house.
I. Gambrell’s Claim
¶ 18. Gambrell claimed the addendum made clear “certain articles” were not being sold along with the house — namely, those articles listed in her complaint. She requested and was awarded possession of those articles.
¶ 19. This case involved a somewhat unique real-estate transaction. Normally, *243 the seller is in possession of her house when she sells it and “moves out” prior to closing. After closing, the buyer then “moves in.” Here, because of the fire and Gambrell’s health condition, the Aeglers moved in before they even put an offer on the house — and before Gambrell had moved out.
¶ 20. To address this circumstance, the parties executed the following addendum to the sales contract: “Seller reserves right to remove certain articles prior to closure and all other remaining furnishings are to remain with the house.” There is no doubt the addendum was to protect Gambrell’s right to “move out” of her house, even though the Aeglers had already moved in. By the addendum’s language, the parties anticipated Gambrell’s move would occur prior to closing. It is not in dispute that once Michael, acting as Gambrell’s agent, communicated to Stuart that Gambrell’s health prevented her from returning to Diamondhead prior to September 1, Stuart waived the time limitation. And Gambrell reasonably relied on Stuart’s assurances Gambrell could remove her property at any time after the closing.
¶ 21. Further, the addendum’s language convinces us the addendum did not act as a forfeiture of all of Gambrell’s property not removed by closing. The addendum did not state “all remaining property,” but instead “all remaining furnishings.” The parties quibble over how best to define “furnishings.” But regardless of how narrowly or broadly one construes “furnishings,” the chancellor correctly pointed out some items of personal property did not become “furnishings” simply because Gambrell kept them in her house. The chancellor included the example of Gambrell’s golf cart as something that cannot be a furnishing. To this we would add, to name just a few items, Gam-brell’s golf clubs, trophies and plaques, sewing machine, and jewelry. All these non-furnishings did not transfer with the house, and the Aeglers clearly had no right to keep them once Gambrell asked for them.
¶ 22. Neither did the addendum state “all furnishings” transferred to Aeglers. Instead, “all remaining furnishings.” If only the furnishings that Gambrell did not remove were to remain with the house, then the intent was for Gambrell to remove among her “certain articles” some of her “furnishings” as well. We are guided by Chism v. Omlie, 239 Miss. 576, 124 So.2d 286 (1960). In that case, Chism and Omile traded a furnished hotel for a furnished ranch. Omile conveyed to Chism “all furniture now in her home ... except ‘personal things.’ ” Id. at 580, 124 So.2d at 287. Omile surrendered possession of her ranch home prior to removing her “personal things.” Chism allowed Omile to later remove some small items of personal property but refused to allow her to remove any furniture. Id. The chancellor awarded Omile the furniture she requested as part of her “personal things,” finding the parties had agreed she was excepting these items from the sale and they were never intended to transfer to Chism. Id. at 581, 124 So.2d at 288. Here, Gambrell’s “certain articles” are analogous to Omile’s “personal things.” Likewise, included in these “certain articles” were some furnishings, which were never intended to transfer with the sale.
¶ 23. The addendum gave Gambrell the right to remove her personal property from a house of which she no longer had possession. It did not operate as a sale of all of Gambrell’s property upon closing. The contract conveyed to the Aeglers the house, the appliances, all items permanently attached, and all remaining furnishings after Gambrell moved out. We find the chancellor was correct to enforce Gam- *244 brell’s right to move out and award her possession of her property as listed in her complaint, excepting those items permanently attached, which were clearly purchased by the Aeglers.
II. The Aeglers’ Counterclaim
¶ 24. In her order denying reconsideration, the chancellor found the Aeglers’ counterclaim, incorporated into their answer, should be dismissed for insufficiency of service of process. The chancellor found there was no evidence in the record the Aeglers properly served the counterclaim. The chancellor found the Aeglers failed to comply with Rules 4 and 5 of the Mississippi Rules of Civil Procedure because the counterclaim filed with the chancery court did not contain a certificate of service and the cover letter directing the court to file the counterclaim did not indicate a copy had been sent to Gambrell’s counsel.
¶ 25. We disagree, under the circumstances, that the lack of a certificate of service necessitated a finding that service of process was insufficient. As a subsequent pleading, only service under Rule 5 was required. M.R.C.P 5(a). Gambrell filed an answer to the counterclaim seventeen days after the counterclaim was filed-evidence that the Aeglers had delivered a copy of the counterclaim to Gambrell’s counsel. See M.R.C.P. 5(b).
¶ 26. But we affirm the dismissal of the counterclaim on summary judgment for different reasons. Puckett v. Stuckey, 633 So.2d 978, 980 (Miss.1993) (“On appeal, we will affirm a decision of the circuit court where the right result is reached even though we may disagree with the reason for that result.”). In their counterclaim, the Aeglers brought three claims against Gambrell: (1) the dispute over the “furnishings” caused the entire contract to fail, requiring rescission; (2) Gambrell failed to disclose the extent of the termite damage, entitling the Aeglers to $5,000 in damages; and (3) Gambrell failed to pass along her insurance proceeds for the June 14, 2007 fire damage. On each claim, the material facts are not in dispute, and Gambrell is entitled to judgment as a matter of law. See M.R.C.P. 56(c).
A. Furnishings
¶ 27. The Aeglers counterclaimed that Gambrell’s furnishings were the inducement for entering into the sales contract. This is their offensive counterpart to their defense against Gambrell’s claim for her property — that they bought all of Gam-brell’s remaining property at closing. For the same reasons we affirm the grant of summary judgment on Gambrell’s claim, we affirm the denial of the Aeglers’ competing counterclaim.
B. Termite Damage
¶ 28. To survive summary judgment, the Aeglers had the burden to put forth evidence supporting each element of their claim. Borne, 12 So.3d at 570 (¶ 16). The Aeglers argue Gambrell misrepresented that she had repaired the termite damage by placing metal siding over the damaged area. Because there is no evidence Gambrell or her son misrepresented or fraudulently concealed any termite damage, dismissal of this claim on summary judgment was proper.
¶ 29. The Aeglers admitted they were provided, prior to closing, the statement disclosing a previous termite infestation and current termite treatment. It is undisputed they had possession of Gambrell’s house for over two months prior to closing, at which time they could have investigated any damage to the home. It is also undisputed they did not hire a professional to inspect whether the termite damage had been repaired properly.
¶ 30. We find nothing in the sales contract that would entitle the Aeglers to *245 damages to repair a condition that was present prior to entering the contract. See Laird v. ERA Bayshore Realty, 841 So.2d 178, 180 (¶¶ 4-5) (Miss.Ct.App.2003) (finding no evidence of reliance on sellers’ “cover-up” of structural damage because purchasers admitted they were aware of damage prior to buying the house). The Aeglers knew Gambrell’s house had been infested by termites. They assumed the metal sheeting meant Gambrell had fully repaired the underlying damage to the wood. That their assumption, which they failed to test through a home inspection, turned out to be wrong cannot be the basis of imposing liability on Gambrell.
C. Insurance Proceeds
¶ 31. We find dismissal was appropriate on this claim because the Aeglers failed to produce evidence Gambrell was under a contractual obligation to turn over her insurance proceeds.
¶ 32. It is undisputed Michael, as Gam-brell’s agent, told the Aeglers they could have any proceeds Gambrell received for damage from the June 14 fire next door. It is also undisputed Gambrell never forwarded the check. But the insurance proceeds were not part of the consideration in purchasing the house. The contract and addendum is entirely silent about the insurance proceeds. And the contract is explicit that it incorporated all prior agreements between Gambrell and Aegler. Further, the Aeglers presented no evidence the parties entered into a subsequent agreement about insurance proceeds or provided any consideration. Instead, Stuart testified Michael told him Gambrell intended to give them the money. This intention, formed at a time when the Gam-brells and Aeglers were feeling much more neighborly toward one another, was a mere promise, not a legally enforceable obligation. Cf. Barcroft v. Armstrong, 198 Miss. 565, 579-580, 21 So.2d 817, 819 (1945) (finding promise to reduce interest rate unenforceable because promisee agreed to no new obligation in exchange). Therefore, the chancellor properly dismissed this claim as well.
CONCLUSION
¶ 33. We are particularly sensitive to the situations that prevented Gambrell from moving out and led to the Aeglers moving in. But we must enforce the contract as written. We find the chancellor was correct that the parties agreed that Gambrell could remove her property after closing and that the contract and addendum were clear that the items Gambrell sought to remove remained her property. We, therefore, affirm the chancellor’s order of summary judgment granting Gam-brell’s claim and dismissing the Aeglers’ counterclaims.
¶ 34. THE JUDGMENT OF THE CHANCERY COURT OF HANCOCK COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY. MYERS, J., NOT PARTICIPATING.

. The chancellor excepted carpeting, window treatments, and items on the list that had been permanently affixed to the Sheetrock.