ILLINOIS CENT. R. CO. *et al. v.* WALES.

(Division B.   Jan. 4, 1937.   Suggestion of Error Overruled, Feb. 15, 1937.)

[171 So. 536.   No. 32388.]

876

Price, Price & McLain, of McComb, **McNeil, Stevens & Zama** and **J. H. Garth,** both of Hazlehurst, **E. C. Craig,** of Chicago, Ill., and **Burch, Minor & McKay,** of Memphis, Tenn., for appellants.

878

880

Hugh V. Wall, of Brookhaven, R. L. Bullard, of Hattiesburg, and Williams & Hunt and Junior O'Mara, of McComb, for appellee.

882

884

Argued orally by **W. G. McLain**, and **Myron S. McNeil**, for appellant, and by **Hugh V. Wall**, and **R. L. Bullard**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellee sued the railroad company and its special agent, Bee, for slander, the alleged slander being in the form of an interrogatory addressed to persons whose names were averred to be unknown to appellee, during the course of an investigation being made by Bee concerning the theft from the railroad company of a large quantity of brass. The first question is whether the original declaration stated a cause of action.

Nothing is better established in the law relating to libel and slander than the rule that a defamation is none the less such merely because it is in the form of a question. The most vicious and harmful defamations are often couched in that form, with the hope to avoid legal responsibility, and at the same time to do all the damage that a direct charge would do. Thus the question: When are you going to pay me for my horse stolen from me the other night? This does not directly charge the person addressed with larceny, but because that person would have no liability to pay, unless a party to the theft, the question is equivalent to a direct charge.

On the other hand, if the owner of the stolen horse make inquiry, as is his right and duty to himself to do, and having reason to suspect John Doe as being the thief, or of having guilty knowledge of it, approach in the pursuit of that inquiry a neighbor of Doe, having reason to believe that the neighbor might know facts pertinent to the inquiry, and ask him the question, Do you think, or don't you think, John Doe was in this horse stealing? this is not a slander, although the inquiry might have been more euphoniously phrased. See Hardin v. Home Ins. Co., 168 Miss. 600, 150 So. 648.

Hence, it is not the form of the language, whether direct or interrogatory, which is controlling, nor, in any case, the particular phraseology, unless there could be no reasonable difference in opinion or understanding that the words are plainly defamatory, and were intended as such, whatever the occasion, and regardless of the circumstances under which uttered. Of cases other than those of the class last mentioned, this court has therefore said, in Wrought Iron Range Co. v. Boltz, 123 Miss. 550, 86 So. 354, that no attempt will be made to lay down any definite rule as to the construction of language charged to be slanderous which will govern all cases, but that the particular language used, and the particular facts and circumstances of each case, must control. We are not referring, of course, in anything said in this paragraph, to statements which are absolutely privileged.

There is the further established rule, founded upon public policy, that communications which would otherwise be defamatory are protected as privileged if they are made in good faith in the prosecution of an inquiry regarding a crime which has been committed, and for the purpose of detecting and bringing to punishment the criminal. 36 C. J., p. 1264. The rule has its application in most cases to inquiries prosecuted or conducted by public officers or their deputies or authorized agents, but

it also covers inquiries by private persons, or their authorized agents, in respect to a matter in which they have a direct personal interest, as, for instance, in the case which we have above used as an illustration, wherein the owner was seeking information about the theft of his horse. Whether the privilege goes any further than to those above mentioned we need not consider and we express no opinion, because not within the present case.

Railroads and other large owners of property, which is situated over a wide territory, much of it in open and exposed country, and which is subject day and night to trespasses and theft unless constantly watched, and wherein losses by theft and trespass would run out of bounds unless special agents were employed and kept constantly on duty to inquire into and run down thieves and trespassers, have found it necessary to keep in their employ men trained to that work; and the men so employed are, in the nature of things, properly within the rule stated in the foregoing paragraph. The property of the owners, and the vast volume of goods and freight intrusted to their care, could not otherwise be effectively protected. The transportation business of the country could not be safely or dependently carried on otherwise.

Here the original declaration, to deal with it more particularly, avers that appellee was in the employ of the defendant railroad company, as foreman of roundhouses; that it was charged by the railroad company that several tons of brass had been stolen from it; that the officers of the company or some of them suspected appellee of having had some guilty knowledge of that theft; that the other defendant, Bee, was a special agent of the railroad company, and was authorized to institute and conduct an investigation into said theft; and that in the course of that investigation said special agent Bee said to divers persons, "Don't you think that Wales (mean-

ing plaintiff) was into that brass stealing?'' It will be observed that it is not averred who the parties were of whom this inquiry was made. So far as the declaration shows, they may have been persons whom the railroad company had good reason to believe knew enough facts to give pertinent information, and in this, as in other cases, the pleading is taken strongest against the pleader.

It is true that the question carried the implication that the defendants suspected appellee of having had a guilty part in the theft, and in its averred form it may imply a strong suspicion; but it is inconceivable how it could be reasonably supposed that an officer or other party within the privilege of investigation, which we are here discussing, could effectively make such an investigation were he precluded from the mention of any names of those under suspicion, or from asking questions which carried the implication of such suspicion. Without the right to do so, within ordinary and reasonable bounds, the privilege of investigation might as well be abolished, and all officers and others within the privilege admonished, that while their duty is to search out criminals and run down crimes, they must not mention any names, nor disclose any suspicion—which would be to propose a wholly impracticable and self-destructive rule.

The case made by the original declaration is no stronger, when closely analyzed, than was the second count in Hardin v. Insurance Co., 168 Miss. 600, 601, 606, 150 So. 648, 649. In that case the adjuster of the insurance company was making an investigation of a fire which had destroyed property of Hardin, and which was insured by the company, and the adjuster during the investigation asked: ''Do you know of any one pushing Hardin on his indebtedness that would cause the house to be burned or set afire? Did you smell gasoline or kerosene at the fire?'' These interrogatories carried, of course, the implication of a suspicion of arson and this

on the part of Hardin, but it was held that the language was not actionable, the court saying that it was "in the nature of interrogatories pertaining to an investigation." The court applied the principles which we have here more fully discussed, under which we are of the opinion that the original declaration stated no cause of action.

On March 21, 1934, more than one year after the cause of action, if any, accrued, appellee filed his amended declaration in which he alleged that the slanderous words of which he complained were as follows: "Don't you think that Wales (meaning plaintiff) is guilty of that brass stealing? I think they ought to have fired him before." And that these words were spoken by the special agent in the presence of E. Smith. It seems to be conceded by appellants that the amended declaration containing for the first time the declarative language, "I think they ought to have fired him before," when looked at in connection with the preceding interrogatory, does state a cause of action. For the purposes of this case we will accept the concession; and this brings into review the second question whether the amended declaration states a new cause of action in so far as to let in the plea of the one year statute of limitations, section 2302, Code 1930, which appellants interposed to the said amended declaration.

It is broadly said in 37 C. J., p. 1078, that "where the declaration states no cause of action, whatever, it will not arrest the running of limitations; and an amendment made after the bar of the statute is complete will be regarded as the beginning of the action, in reckoning the statutory period of limitations." As a matter of pure legal logic the above announcement would seem to be unanswerable; for if no cause of action at all has been stated in the original pleading, then an amendment which for the first time does state a good cause would be to state a cause new to the particular case—it cer-

tainly would not be old in respect to the declaration or complaint. Many, if not most, of the courts have, however, declined to follow strictly the above stated rule. Some of them have said that the plea of the statute of limitations is not available against an amended declaration or complaint, when the facts stated in the original complaint are sufficient, when read in the light of the amendment, to disclose that the amendment is but the perfection of the imperfect statement of the cause of action attempted originally to be pleaded. 17 R. C. L., p. 819. Others have said, and we believe in a more accurate manner, that when the main facts are set out in the original pleading, and an amendment is made which merely elaborates upon those facts and sets forth additional incidental facts not changing the original picture presented, although those incidental facts may be necessary, in point of strict law, to the statement of a good cause of action, the amendment introduces no new cause in such sense as to let in the plea of the statute of limitations.

No case among our decisions upon the precise point has been called to our notice, but we think some light may be obtained from the following: Broom v. So. Ry. Co., 115 Miss. 493, 76 So. 525; Clark v. Gulf, M. & N. R. Co., 132 Miss. 627, 97 So. 185; Dodds v. Cavett, 133 Miss. 470, 97 So. 813. In the Broom case the main facts were set out in the declaration, but the declaration averred that the injury occurred while the deceased employee and his employer railroad company were engaged in intrastate commerce. After two years from the time the cause of action accrued, plaintiff amended her declaration so as to aver that the injury occurred in interstate commerce. The court held that there was no new cause of action under the Federal Employers' Liability Act (45 U. S. C. A., sec. 51, et seq.), although the amendment was necessary in order to bring the suit within that act. The court said that the "amendment did not

present a new or different statement of facts upon which the action was based"—in other words, that the amendment was of an incidental, not a main fact, although the incidental fact was one necessary to be averred, in strict point of law. In the Clark case, on the other hand, the declaration did not set out the main facts, so as to disclose a real picture of the case sought to be prosecuted, but stated only enough to come within the so-called prima facie negligence statute, section 1985, Code of 1906, section 1580, Code of 1930, and while sufficient in respect to an intrastate case, was insufficient in its disclosure of the main facts to bring it within the interstate liability act. After two years plaintiff sought by amendment to set out the main facts which would be sufficient to show that the action was one under the federal liability act, and the court held that the plea of the two years' statute to the amended declaration was well taken. In the Dodds case, which was one to enforce a materialman's lien, it was discovered in the trial that part of the material furnished had been used in another house, not described in the petition, although upon the same premises. The petitioner sought to reach the other house, along with the ones already described, by an amendment, but the court held that the right thus to include the other house could not be enforced because the twelve months' limitation had run at the time the petition was sought to be amended. Under the statute a description of the house or houses sought to be proceeded against was an essential main fact, not an incidental fact, and thus the amendment to aver for the first time a main or primary or foundation fact, would not relate back to the original institution of the suit.

The length of this opinion is already such that we cannot pursue other cases in our own state, nor the many cases from other jurisdictions which we have examined. These, or most of them, will be found cited under the notes to the texts which we have mentioned, and in

the briefs of counsel, as abstracted by the reporter. We merely repeat at this point that in our opinion an approximately accurate statement of the correct rule is that when the main facts are set out in the original declaration or complaint, and an amendment is made which merely elaborates upon those facts and sets forth additional incidental facts not changing the original picture presented, although those incidental facts may be necessary, in point of strict law, to the statement of a good cause of action, the amendment introduces no new cause in such sense as to let in the plea of the statute of limitations.

Here the amendment introduced new main facts; it changed the original picture from one of an inquiry to one which made direct charges. It presented a new cause of action within the rules which we have been discussing, and the peremptory charge for both of the defendants should have been granted.

Reversed, and judgment here for appellants.