## TAYLOR v. STANDARD OIL CO.

(Division A.   Feb. 6, 1939.)

[186 So. 294.   No. 33521.]

**Barnett, Jones & Barnett** and **D. C. Enochs**, all of Jackson, and **Frank F. Mize**, of Forest, for appellant.

Lyell & Lyell, of Jackson, for appellees.

Argued orally by **Ross R. Barnett**, for appellant, and by **Garland Lyell**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellant and J. B. Stewart were respectively the junior and senior commission managers of the large service station of appellee company at the corner of Amite and North State Streets in the City of Jackson. It was their duty, in co-operation with each other, and under a plan which they themselves had inaugurated, to make at frequent intervals correct reports of services, sales, and receipts and to correctly and fully account to their employer for all such receipts, and as to the disposition of the various petroleum and other products and supplies handled by or under them.

These manager employes had been paid partly on the basis of a fixed salary and partly by commissions. Their contracts of employment were terminable at the will of the employe or the employer. It had been decided that on and after June 1, 1937, these employes would be put on a fixed salary without any additional compensation by way of commissions.

To this end a complete audit of the accounts of the said commission managers was made on May 31, 1937, but this audit, the correctness of which appellant does not deny, showed a shortage against them of something more than $200. During the afternoon of that day and while the audit was not yet complete, appellant's attention, as the record fairly discloses, was called to the fact that the figures, as compiled up to that hour, showed a discrepancy of about $196; but appellant admits that he offered no explanation, and, in fact, appears to have manifested but little active interest in the matter.

The record discloses further that going back over the daily reports of these commission managers from January 1, to May 31, 1937, there were numerous errors and inaccuracies therein, sometimes against the managers and sometimes against their employer, and that it was repeatedly necessary to go to considerable trouble in time and effort to get these discrepancies properly adjusted and reconciled, and as to which appellant admits he was more than once cautioned and warned. It is proved by the documentary exhibits that in the local head accounting office of appellant there was kept what was termed an "Over and Short Account," and this account, the correctness of which is admitted, shows that in the reports made by appellant himself during the five months mentioned there were eighty-nine over or short items. And it is found that as to one item, on the report of appellant for January 6, 1937, the appellant himself in admitting a shortage of $18.72, used the following words: "Short—18.72—84 gal. error in meter reading," these words being in his own handwriting.

The superintendent in charge of the various stations of appellee company in Jackson was J. C. Reed. When, on the completion of the audit of May 31, 1937, Reed was informed of its result, he decided to terminate the employment of appellant and Stewart, and a little before nightfall Reed telephoned appellant that he desired appellant to come to the station at once; that he and Stewart were short and that it had been decided to check them out. Appellant went at once to the station where Reed was awaiting him. It is charged in the declaration that Reed there said to appellant, in the presence and hearing of others, as follows: "You boys (meaning J. S. Taylor, plaintiff, and one Stewart) are short some money at this station and we are going to have to check you out of here. Hurry up and go upstairs and check out and get through here."

Upon the trial, the court directed a verdict for the defendant, and the plaintiff has appealed. He relies large-

ly upon Great A. & P. Tea Co. v. Majure, 176 Miss. 356, 167 So. 637, 168 So. 468, in which it was held slanderous per se to falsely charge that a clerk in a mercantile store has been guilty of a shortage. There were five factual elements coexistent in the Majure Case from which it could not have reasonably been otherwise said than that a false defamation was definitely intended, and was so understood by those to whom it was published. Language is actionable per se (1) when a crime or communicable disease is thereby falsely charged, or (2) when the language falsely imputes to another (a) conduct, or (b) attributes of character, which are incompatible with the proper conduct of his business, trade or profession. A. L. I. Rest. Torts, Sections 570, 615.

But the Majure Case is to be read in connection with its precise facts and is not to be construed as holding that in all cases, and without regard to all the surrounding circumstances, a charge of shortage is to be considered libelous per se. The rule, in cases of this class, is that both the judge and the jury in performing their respective functions take into account all the circumstances surrounding the communication of the matter complained of as defamatory. A. L. I. Rest. Torts, Sec. 614, subpar. c, p. 305. Accordingly, it was said in Illinois Central R. Co. v. Wales, 177 Miss. 875, 885, 171 So. 536, 538, "that no attempt will be made to lay down any definite rule as to the construction of language charged to be slanderous which will govern all cases, but that the particular language used, and the particular facts and circumstances of each case, must control."

There are several different interpretations or constructions which may be placed upon the charge of a shortage against those who not only conduct, or supervise the conduct of, the particular business of an employer, when that business is large, but who also keep the daily accounts and make their own frequent reports thereof to their employer, as was the case here. One of these interpretations would mean that errors in calculation had been in-

advertently made in the reports; another that factual elements had been unintentionally omitted, and still others that some other or others of the various factors that make such reports inadvertently or unintentionally erroneous had intervened which would result in a shortage in a check-up or on an audit. Persons familiar with commercial practices and with accounting and auditing understand that, in business parlance, to speak of a shortage may reasonably mean, under appropriate circumstances, any one or more of the things above mentioned. Appellant admits in his brief that ''the said shortage in money and in stock on hand in the station might have occurred in several possible ways,'' and contents himself with saying that he didn't know how it happened.

On the other hand, such language may be construed as charging criminality or conduct incompatible with the proper conduct of the business, trade or profession of the person against whom the language is directed. The rule is, then, that when a statement is reasonably capable of several meanings, some of which would be defamatory and some would not, the burden is on the plaintiff to prove that it was reasonably and properly understood by the person or persons to whom it was published as having the defamatory meaning. A. L. I. Rest. Torts, Sec. 613, p. 300, and Sec. 614. And there is no defamation if the recipient does not so understand it; and in determining the reasonableness of the recipient's understanding that meaning is to be given to the words which is ordinarily attached thereto by persons familiar with the language used. Id. Sec. 563, p. 147, and see also Id. Sec. 559, p. 142.

Plaintiff recognized the aforesaid rules as applicable to, and as required to be met in, his case, and complied therewith in so far as his pleadings were concerned; wherefore in his declaration he specifically averred that appellee's superior officer had intended to charge and did charge that appellant ''had wrongfully and fraudulently taken, stolen, and carried away the money and property

belonging to the defendant company and had embezzled the same and misappropriated the same to his own personal use," etc.

But when it came to the proof, appellant, as plaintiff, introduced only one third person witness who heard the alleged language. That witness, instead of supporting the allegation that a charge of crime was thereby made and was so understood by those to whom it was published, testified that the language used was as follows: "You and Mr. Stewart have been checked over a hundred dollars short; go inside and let them check you out." Thus the only third person witness introduced on the issue of the meaning and understanding of the language, as regards the recipient third persons, not only failed to support the allegation that there had been a charge of criminality, but disproved it, testifying that the charge which was understood to be made was simply that appellant and his associate had been checked short; and appellant himself does not dispute the truth of that statement, nor, as already mentioned, does he dispute that the check was correctly made.

There is respectable authority in the books for the proposition that where a plaintiff charges a specific interpretation of the language used and fails to prove the alleged interpretation, he cannot fall back upon some other interpretation. It is not necessary to decide that point, for if appellant be allowed to fall back to the only other interpretation which, under the particular facts of this case, would be slanderous, to wit, that he and his associate had been careless or inaccurate in such a measure as would justify an employer in adjudging the conduct of the employe to be incompatible with the proper conduct of his business or employment, then the truth of that charge was sufficiently established by the testimony and admissions of appellant himself; and the rule in this State has long been settled that the truth of a charge is a sufficient excuse for its utterance, in slander and libel, Jarnigan v. Fleming, 43 Miss. 710, 722, 5 Am.

Rep. 514; Bass v. Burnett, 151 Miss. 852, 859, 119 So. 827, care being taken here to distinguish actions in slander or libel from those under our actionable words statute, Section 11, Code 1930, as to which see Jefferson v. Bates, 152 Miss. 128, 118 So. 717. The declaration here makes no effort to bring this case within the said statute, even if it could have been so brought.

Much of the argument of appellant is to the effect that there was no proper plea by defendant in support of the aforementioned conclusions. In this appellant is mistaken, the proper plea being found at or near the close of the transcript—although it should have copied by the clerk, along with the other pleadings, at the opening pages.

There are other reasons which, under this record, require an affirmance; but we do not deem it necessary to pursue them, since the reason given is sufficient.

Affirmed.