## KILIAN v. STACKPOLE SONS, Inc.

### No. 3096.

United States District Court,
M. D. Pennsylvania.
June 15, 1951.

Lewis Weinstock, of Conlen, LaBrum &
Beechwood, Philadelphia, Pa., A. K. Shipe,
Washington, D. C., W. E. Shissler, Harris-
burg, Pa., for plaintiff.

William S. Bailey, John J. Schatt, Har-
risburg, Pa., for defendant.

MURPHY, District Judge.

■ Plaintiff, of Michigan, sued defend-
ant, a Pennsylvania publisher, for libel.
The verdict of the jury was in favor of de-
fendant. Plaintiff seeks a new trial.[1] As
required, we view all facts and inferences
reasonably deducible therefrom most favor-
able to the defendant. Rice v. Bauer, 359
Pa. 544 at page 547, 59 A.2d 885; Van
Sant v. American Express Co., 3 Cir., 169
F.2d 355, 365.

■ Since we have only diversity juris-
diction, Pennsylvania law, including its
Conflicts of Law rule, determines the sub-
stantive rights of the parties. Hartmann
v. Time, Inc., 3 Cir., 166 F.2d 127, 1 A.L.R.
2d 370, c.d. Id., 334 U.S. 838, 68 S.Ct. 1495,

1. A ten day trial. Only the charge, not the testimony, was transcribed.

502

92 L.Ed. 1763; Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 1948, 166 F.2d 908.[2]

A case involving later editions of the book in controversy by another publisher was brought in the State courts. The jury found for defendant; an appeal was taken. In order to have the light afforded by an opinion of the Supreme Court of Pennsylvania, we delayed disposition of plaintiff's motion. The judgment was reversed and a new trial awarded. The original opinion was later modified as to privilege. Since the alleged libelous material is there spelled out at length, we will not repeat it here. See Kilian v. Doubleday & Co., 367 Pa. 117, 79 A.2d 657.

Involved is a book, "The Purple Testament—Life Stories by Disabled Veterans", a series of stories by fifty-three disabled veterans written as English themes while in attendance on an English course conducted by one Don M. Wolfe in a government-sponsored rehabilitation school. One of the stories, "Justice, Lichfield Style" by Joseph M. O'Connell, purports to be an account of his observations and reactions resulting from an alleged over-night visit to the United States Army 10th Replacement Depot, at Litchfield, England, while the plaintiff was the commanding officer. Actually O'Connell, a Normandy battle casualty, was confined at the 312th Station Hospital, 12 miles away, and never did in fact visit the depot. On the contrary, his story was based upon hearsay, a study of plaintiff's picture, and O'Connell's imagination.

Plaintiff, insisting that O'Connell's alleged facts and his comment thereon were libelous, charged defendant with having caused the book to be printed at Harrisburg, in this district, in January 1947, and thereafter to be distributed and circulated throughout the United States and elsewhere.

Defendant made no pre-trial motion to attack the complaint, nor to fix the situs of the alleged tort or torts. In its answer it did not plead truth as a defense but denied falsity and in addition plead (a) that plaintiff stated no cause of action upon which relief might be granted; (b) that it had received no commission from sales and was the printer only; (c) privilege and fair comment; (d) the Pennsylvania one year-statute of limitations.[3]

In response to a request from Wolfe as editor, defendant caused 2000 copies of the book and accompanying jackets to be printed, and to facilitate getting the book to reviewers and receiving a favorable response, as well as to promote the sale and circulation thereof, permitted its name to appear thereon—on the back of the dust jacket, the inside flap thereof, the back of the book, and at the bottom of the title page—places usually reserved for the publisher's name.

Defendant also caused the printing and mailing of advertising circulars prepared by Wolfe, and, upon receipt of instructions from Wolfe, when the book was ready for distribution, caused copies of the book to be sent to various individuals, reviewers, periodicals and booksellers throughout the United States. The actual printing, binding, mailing and shipping was done by The Telegraph Press, a separate entity, upon defendant's request.

A flat rate was charged and paid for the printing and binding; no charge for the mailing and shipping except reimbursement for the actual costs involved. Defendant did not participate in the commissions or other income, if any, realized from sales

2. Solomon v. Neisner Bros., D.C.M.D.Pa., 93 F.Supp. 310, affirmed 3 Cir., 187 F. 2d 735, citing cases, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231 (State Statute of Limitations); Palmer v. Hoffman, 1943, 318 U.S. 109, 117, 118, 63 S.Ct. 477, 87 L.

Ed. 645, 144 A.L.R. 719 (Burden of Proof); Stoner v. New York Life Ins. Co., 1940, 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 264 (Sufficiency of Proof).

3. § 1, Act March 27, 1713, 12 P.S.Pa. § 31, provides inter alia that actions on the case for words must be brought "within one year next after the word spoken, and not after"; § 35, Act April 25, 1850, 12 P.S.Pa. § 32, extends the earlier Act "to all cases of slander or libel, whether spoken, written or printed."

of the book. A legend setting forth this fact was prominently displayed in the book itself.

The edition was completed November 19, 1946; circulation and distribution to the usual bookselling channels followed immediately. Prior to December 9, 1946, 339 copies had been shipped to various parts of the United States. All but 68 copies of the 2000 in all were shipped by March 12, 1947.

■■ Everyone who requests, procures or commands another to publish a libel is prima facie answerable. Wills v. Hardcastle, 19 Pa.Super 525; cf. Runkle v. Meyer, 3 Yeates, Pa., 518, 519; Albi v. Street & Smith Publications, Inc., 9 Cir., 140 F.2d 310, 313; Restatement, Torts, § 577, comment f. "There is an intent to publish * * * when the actor does an act for the purpose of communicating it to a third person or with knowledge that it is substantially certain to be so communicated * * *. It is immaterial that the publisher does not intend to defame the other and has no knowledge that the communication is or can be understood as defamatory." Id., comment k. Merchants' Ins. Co. of Newark, N. J., v. Buckner, 6 Cir., 98 F. 222, 230–231; Gulf Refining Co. v. Morgan, 4 Cir., 61 F.2d 80, 82; Youmans v. Smith, 153 N.Y. 214, 47 N.E. 265, 266; Corrigan v. Bobbs-Merrill Co., 228 N.Y. 58, 63, 64, 126 N.E. 260, 262, 10 A.L.R. 662. The test is that of the "reasonable man". Restatement, Torts, § 577, comment m.

■ At common law each time a libelous article was brought to the attention of a third person a new publication occurred and each publication gave rise to a separate cause of action. This is still the law in many jurisdictions.[4] That rule originated in an era which long antedated the modern process of mass publication and

nation-wide distribution of printed information. It gave scant heed to the public policy which underlies the statute of limitations long regarded as "statutes of repose" designed to outlaw stale claims. Guaranty Trust Co. v. United States, 304 U.S. 126, 136, 58 S.Ct. 785, 82 L.Ed. 1224; Chase Securities Corp. v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628. Recognizing that radical changes have been brought about by modern methods of disseminating printed matter and desiring to avoid multiplicity of suits and to give effect to statutes of limitations, within recent years many cases have ruled that publication of defamatory matter in a single issue of a newspaper or of a magazine, although such publication consists of thousands of copies widely distributed, is in legal effect one publication which gives rise to but one cause of action and that the applicable statute of limitations runs from the date of that publication. See e. g., Wolfson v. Syracuse Newspapers, Inc., 254 App.Div. 211, 4 N.Y.S.2d 640, affirmed 279 N.Y. 716, 18 N.E.2d 676; Age-Herald Pub. Co. v. Huddleston, 207 Ala. 40, 43, 92 So. 193, 37 A.L.R. 898.

In Hartmann v. Time, Inc., supra, 166 F.2d at page 134, the Court of Appeals concluded after an examination of the Pennsylvania cases available—none of them precisely in point—"that the courts of Pennsylvania would follow the Alabama and New York rule of one issue constituting a single publication and a single libel; in short, * * * the 'single publication' rule." That the "rule, is the preferable one and is recommended both by logic and by public policy." That "Public policy must regard the freedom of the press and while the law must exact penalties for libel the instruments of free and effective expression, newspapers and magazines which are published on a nation-wide basis, should

---

4. See e. g., Duke of Brunswick v. Harmer, 1849, 14 Q.B. 185, 117 Eng.Rep. 75; Street v. Johnson, 1891, 80 Wis. 455, 50 N.W. 395, 14 L.R.A. 203; Hartmann v. American News Co., D.C.W.D.Wis.1947, 69 F.Supp. 736, 738, 739; Holden v. American News Co., D.C.E.D.Wash.1943, 52 F.Supp. 24 at page 32; cf. "We ob-

serve, however, no substantial difference between the law of Florida and that of other common law States". Caldwell v. Crowell-Collier Pub. Co., 5 Cir., 1947, 161 F.2d 333 at page 335, c.d. 332 U.S. 766, 68 S.Ct. 74, 92 L.Ed. 351; Restatement, Torts, § 578(b).

not be subjected to the harassment of repeated law suits."

In Gregoire v. G. P. Putnam's Sons, Books, Inc., 1948, 298 N.Y. 119, 81 N.E.2d 45 at page 48, the single publication rule was extended in New York to include books. The New York Court of Appeals found the reasons underlying the statutes of limitations as compelling when applied to modern dissemination of printings or impressions of a book as when applied to cases involving newspapers or magazines; that, otherwise, the statute of limitations as to an edition of a book could go on ad infinitum. In accord as to books, see Wolfson v. Syracuse Newspapers, Inc., 4 N.Y.S. at page 642. Said the court in Gregoire v. G. P. Putnam's Sons, Books, Inc., supra, 81 N.E.2d at page 49, "Although it may not be said that the publication and dissemination of books has reached that degree of mass production and widespread distribution now prevalent in fields invaded by newspapers and periodicals, it is our view that the publication of a libelous book, involving styling, printing, binding and those other acts which enable a publisher on a given date to release to the public thousands of copies of a single printing or impression, affords the one libeled a legal basis for only one cause of action which arises when the finished product is released by the publisher for sale in accord with trade practice."

The precise decision was that the statute of limitations began to run from the date of the initial publication. See Mattox v. News Syndicate Co., Inc., 2 Cir., 176 F.2d 897 at page 905, 12 A.L.R.2d 988. Cf.

Hartmann v. Time, Inc., 64 F.Supp. 671 at page 679, "the cause of action accrues, for the purpose of the statute of limitations, upon the first publication, when the issue goes into circulation generally." Hartmann v. Time, supra, 166 F.2d at page 135.[5] In a single publication state, additional shipments would not create a new cause of action or stop the running of the statute of limitations. Id. See Note 1 A.L.R.2d 384, 48 Col.L.Rev. 475; Id. 932; 97 U. of P. L.Rev. 291; 27 N.Car.L.Rev. 271; 60 Harv.L.Rev. 941.

We therefore hold, applying the same reasoning and logic, that a Pennsylvania court would include books within the "single publication" rule, and rule that the statute of limitations on the edition in question commenced to run on November 17, 1946. Since the plaintiff did not file his complaint until December 9, 1947, the defendant's plea of the statute of limitations should have been sustained as to any cause of action arising in Pennsylvania.[6] This plea would likewise bar claims arising in all single publication states since as to these the time allowed in the statute would commence to run from the date of the original publication.

What of publication, if any, in states following the traditional common law rule? Although Pennsylvania would hold that one edition constituted but one publication and one libel as a matter of internal law,[7] whether it would continue to follow its traditional conflicts of law rule of reference to the place of the wrong—applied where injury occurred in another state,[8]

5. See Id. as to whether the statute in Pennsylvania commences to run from the date the edition is printed or only after publishing, i. e., "making the libelous material known to some person not privileged." The court did not resolve this question, nor do we here.

6. There was no basis for estoppel. The plea of the statute of limitations was properly raised. Plaintiff cited Van Sant v. American Express Co., 3 Cir., 169 F. 2d 355 at page 372; Roe v. Sears, Roebuck & Co., 7 Cir., 132 F.2d 829, but see Downey v. Palmer, 27 F.Supp. 993; Di Trapani v. M. A. Henry Co., Inc., D. C., 7 F.R.D. 123.

7. Cf. Pollock v. Pittsburgh, B. & L. E. R. Co., 275 Pa. 467, 473, 119 A. 547, 549, 26 A.L.R. 1232.

8. The law of the place where the injury was sustained—the lex loci delicti—determines whether a right of action exists. Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1 at page 9, 68 A.2d 517; slander, where the words were spoken: Klumph v. Dunn, 66 Pa. 141 at 146; libel, where the report was received and published: Campbell v. Willmark Service System, Inc., 3 Cir., 123 F.2d 204, 206; Hartmann v. Time, Inc., 64 F. Supp. 671 at page 681; Restatement, Conflict of Laws, § 377, Note 5, § 378;

—to the situation presented by a multistate tort, "remains to be seen". See Goodrich, J., in Campbell Soup Co. v. Armour & Co., 3 Cir., 175 F.2d 795 at page 796. "The rule is clear enough, although the application of it may get bewilderingly complicated." Id. See Note, 60 Harv.L. Rev. 941 at 944, 945; Note 48 Col.L.Rev. 932, 935, 938.

■ Rosenzweig v. Heller, 302 Pa. 279 at page 285, 153 A. 346, holds that statutes of limitation should operate equally upon litigants seeking relief in Pennsylvania, whether the remedy sought is for a cause of action originating in Pennsylvania or elsewhere. See Otis for Use of Eaton v. Bennett, 3 Cir., 91 F.2d 531 at 532, quoting from Amy v. City of Watertown, 130 U.S. 320, 324, 9 S.Ct. 537, 538, 32 L.Ed. 953: " 'The general rule' respecting statutes of limitations 'is that the language of the act must prevail, and no reasons based on apparent inconvenience or hardship can justify a departure from it.' "

Suppose that after the date of the original publication defendant sold two copies of the book—one to a Pennsylvanian, another to a citizen of Wisconsin, and assuming that each later read and understood the story in controversy, under the rule of Rosenzweig v. Heller, supra, would a Pennsylvania court bar the Pennsylvania claim, but not that of the citizen of another state?

Hartmann v. Time, Inc., supra, 166 F.2d at pages 134, 135, expressed a preference for a conflicts of law rule which would refer to the law of but one state.. The court, following Pennsylvania law, held however that the trial court must look to the law of the several states involved, and, if publication occurred in a common law state, that would constitute a separate cause of action, and the period of the statute of limitations would not commence to run until the date of publication in that particular state.

In an attempt to show publication in states following the "multiple publication"

rule, plaintiff sought to dispense with the necessity of proving that the alleged libel was read and understood by a third person. True, courts have held actual proof unnecessary; that it might be inferred when the "single publication" rule is applicable. See Hartmann v. Time, Inc., supra, 64 F. Supp. at page 678; 166 F.2d at page 135. Under the traditional common law rule however such proof is indispensable. Cf. Williams v. Kroger Grocery & Baking Co., 337 Pa. 17 at page 20, 10 A.2d 8; 33 Am. Jur., Libel and Slander, § 90, p. 103. " * * printing a libel is regarded as a publication when possession of the printed matter is delivered with the expectation that it will be read by some third person, provided that result actually follows." 53 C.J.S., Libel and Slander, § 81, page 130. " * * It is necessary not only that the defamatory matter be brought to the attention of a third person but that he understand its defamatory significance." Restatement, Torts, § 577, comment c. There must be proof that "the person to whom the communication is made understood their purport and meaning and knew to whom they referred. Weidman v. Ketcham, 278 N.Y. 129, 131, 15 N.E.2d 426." Wolfson v. Syracuse Newspapers, Inc., supra, 18 N.E. 2d 676, 678.

In the second week of the trial, having failed to prove any such publication, plaintiff in order to meet this evidentiary requirement gave notice to defendant that within less than forty-eight hours thereafter he would take depositions in Winter Park, Florida, Vancouver, Washington, and Janesville, Wisconsin.[9] The testimony did not show the book was read in either Washington or Florida. As to Wisconsin there was testimony that on January 24, 1947, one person purchased a copy of the book, and that he read the story in question sometime in March 1947; he did not testify as to his understanding of it or, in view of plaintiff's contentions, its connotations, im-

---

cf. Id. § 66, comment c; Note 60 Harv. L.Rev. 941 at 944, and footnote 32.

The right of action accrues only *when* injury is sustained by the plaintiff—not when the causes are set in motion which ultimately produce injury as a consequence. Foley v. Pittsburgh-Des Moines Co., supra, 363 Pa. at page 38, 68 A.2d 517; see In re Shaffer's Estate, 228 Pa. 36 at page 40, 76 A. 716.

9. Washington and Wisconsin, and apparently Florida, follow the "multiple publication" rule. See footnote 4, supra.

**506**

plications or its comprehensiveness. As to the necessity for same, see Restatement, Torts, § 563 and comments c and e, § 564 and comment a.[10]

When notice as to taking depositions was given, defendant objected to taking them under the circumstances—contemporaneously and over such a wide area. Defendant insists he was not afforded ample notice nor reasonable opportunity for counsel who were familiar with the case to be present when the depositions were taken, and to cross-examine the deponent. See Clair v. Philadelphia Storage Battery Co., 27 F.Supp. 777, 778. Rule 30(a) of the Fed.Rules Civ.Proc. 28 U.S.C.A., requires that reasonable notice be given. Such notice was not given to the defendant and under the circumstances the depositions should not have been admitted in evidence for any purpose. For a factual situation practically on all fours with that here present, see Mims v. Central Mfrs. Mut. Ins. Co., 5 Cir., 178 F.2d 56 at page 59.

As an additional arrow to his bow, defendant avers that during the trial plaintiff offered in evidence generally the paragraph of defendant's answer which plead privilege and fair comment, and argues that plaintiff is bound thereby. "Where * * * paragraphs of an affidavit of defense are offered by the plaintiff generally, the averments of fact therein contained must be given due credit." See Crew Levick Co. v. Gibbon, 115 Pa.Super. 595 at page 597, 176 A. 27; Kull v. Mastbaum & Fleisher, 269 Pa. 202, 204–205, 112 A. 631.

"* * * A party may be relieved of the burden imposed upon him by the fact that the necessary proof is introduced by his adversary." 20 Am.Jur., Evidence, § 135, p. 140; Otto v. Western Saving Fund Soc., 343 Pa. 615 at page 621, 23 A.2d 462.

As to the remedy, the law of the forum—the lex fori—controls. Restatement, Conflict of Law, § 380(1), § 383, comment b, § 595, comment a, b; Tobin v. Pennsylvania R. Co., 69 App.D.C. 262, 100 F.2d 435, 436; Foley v. Pittsburgh-Des Moines Co., supra, 363 Pa. 9–10, 68 A.2d 517; Rosenzweig v. Heller, supra, 302 Pa. 279 at page 285, 153 A. 346. This would obviously include the determination as to whether there is sufficient evidence of an issue of fact to warrant its submission to a jury. Norwood v. Great American Indem. Co., 3 Cir., 146 F.2d 797, 799; Sudol v. Gorga, 346 Pa. 463 at pages 465, 466, 31 A.2d 119; Singer v. Massina, 312 Pa. 129, 135, 167 A. 583, 89 A.L.R. 1271; Restatement, Conflict of Law, § 595.

Absent proof of publication in any traditional common law state, the case should not have been submitted to the jury.

Plaintiff's motion for new trial will therefore be denied.

10. Warnock v. Mitchell, C.C.W.D.Tenn., 43 F. 428; Fry v. McCord, 95 Tenn. 678, 33 S.W. 568 at page 572; McGeever v. Kennedy, 42 S.W. 114, 115, 19 Ky.Law Rep. 845; Lally v. Cash, 18 Ariz. 574, 164 P. 443; Yousling v. Darr, 122 Iowa 539, 98 N.W. 371; Norris v. Brady, 234 Mo.App. 437, 132 S.W.2d 1059 at pages 1061–63; Taylor v. Standard Oil Co.,

184 Miss. 392, 400, 186 So. 294, 296. Cf. Callan v. Gaylord, 3 Watts., Pa., 321 at page 324, but see Travis v. Brown, 43 Pa. 9 at page 16. The Callan v. Gaylord case has never been cited as authority on the proposition. See cases cited in argument of counsel in that case at p. 323.