899 So.2d 210 (2005)
Audrey BRACEY, Individually and as Representative of the Wrongful Death Heirs of Addie M. Palmer, Deceased, Appellant,
v.
David M. SULLIVAN, M.D., Appellee.
No. 2003-CA-01316-COA.
Court of Appeals of Mississippi.
January 18, 2005.
Rehearing Denied April 12, 2005.
D.L. Jones, Jackson, attorney for appellant.
*211 Molly Mitchell Walker, Mildred M. Morris, Jackson, attorneys for appellee.
Before BRIDGES, P.J., MYERS and BARNES, JJ.
BRIDGES, P.J., for the Court.
¶ 1. Upon the death of Addie Mae Palmer, Audrey Bracey, individually and as representative of Palmer's heirs, filed a wrongful death action in the Circuit Court of Hinds County, First Judicial District, which, in relevant part, averred medical malpractice by Dr. David M. Sullivan. After the statute of limitations expired, Bracey filed a motion for leave to amend the complaint for the purpose of asserting an additional cause of action against Dr. Sullivan, and Dr. Sullivan subsequently filed a motion for summary judgment. The trial court denied Bracey's motion for leave to amend and granted summary judgment for Dr. Sullivan, so Bracey has appealed raising the following issues:
I. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING BRACEY'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT?
II. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN GRANTING DR. SULLIVAN'S MOTION FOR SUMMARY JUDGMENT?

FACTS
¶ 2. On September 22, 1999, Addie Mae Palmer was admitted as an emergency patient to St. Dominic Hospital in Jackson, Mississippi, and presented to the hospital a significantly extensive medical history that included such conditions and ailments as hypertension, hypertensive cardiovascular disease with chronic idiopathic pericardial effusion requiring percardial window, a multinodular goiter with hypothyroidism, severe degenerative arthritis, hyperlipidemia, adrenal mass, cystocoele, diverticulosis, gout, chronic obstructive pulmonary disease, chronic anemia, chronic renal insufficiency, positive ANA, or connective diseases, and solid nodules in her left lung. The hospital discovered that the cause of the emergency was a ruptured anterior communicating aneurysm, which required a craniotomy and clipping of the aneurysm.
¶ 3. At that time, Palmer was being prescribed approximately twenty-five medications. Some of these medications, which were part of her regimen prior to being admitted for said aneurysm, were prescribed by Dr. David M. Sullivan, as an employee of St. Dominic Hospital. However, most of the medications she received after her admission were prescribed by consultants.
¶ 4. Soon after surgery on the aneurysm, Palmer developed hydrocephalus, which required an additional surgery. Afterwards, Palmer was taken to a transitional care unit (TCI) for rehabilitation. The following day, however, she developed acute angioedema, which required more medication and a transfer to intensive care, but just a few days later, she was able to return to TCI. Complications from the surgeries arose during the following ten days, though, so Palmer was readmitted to St. Dominic Hospital for surgery. She was subsequently prescribed several more medications after developing a VRE urinary tract infection and fever, while also experiencing chronic renal failure, undergoing an infectious disease consultation, and having epidermal breakdown of the incision.
¶ 5. Shortly thereafter, considering her continued medical problems and a large mass in her left lung, which was believed to be malignant, Palmer's family finally decided to transfer her to hospice care. But before being transferred, Palmer developed *212 a rash that progressed into Stevens-Johnson Syndrome. She then died on November 15, 1999.
¶ 6. In September of 2001, Audrey Bracey, individually and as representative of Palmer's heirs, filed a wrongful death action in the Circuit Court of Hinds County, First Judicial District, which, in relevant part, averred medical malpractice by Dr. David M. Sullivan. The complaint alleged that Palmer was receiving treatment from Dr. Sullivan in November of 1999, at which time he prescribed for her Vasotec, an ACE inhibitor, despite having access to her medical records which indicated that she was allergic to ACE inhibitors, and that, as a result, Palmer had an adverse reaction effectuating her development of Stevens-Johnson Syndrome and, thus, causing her death. Dr. Sullivan responded denying, inter alia, having prescribed Palmer said drug.
¶ 7. The statute of limitations for this cause of action expired on November 15, 2001, yet in January of 2002, Bracey filed a motion for leave to amend the complaint for the purpose of additionally alleging that, despite knowing a person in renal failure could develop Stevens-Johnson Syndrome if prescribed allopurinol, Dr. Sullivan prescribed Zyloprim, which is an allopurinol, for Palmer, who was suffering from renal failure, causing Palmer to developed Stevens-Johnson Syndrome, which produced her death. In November of 2002, Dr. Sullivan filed a motion for summary judgment. The court held a hearing on these motions the following March, after which it denied Bracey's motion for leave to amend and granted summary judgment for Dr. Sullivan. Aggrieved by the decision, Bracey appeals claiming that the judgment of the court as to each motion constitutes reversible error.

LAW AND ANALYSIS

I.

MOTION TO AMEND THE PLEADINGS
¶ 8. "Motions for leave to amend are left to the sound discretion of the trial court." Frank v. Dore, 635 So.2d 1369, 1375 (Miss.1994) (citations omitted). Therefore, the standard under which we proceed is abuse of discretion. Id.
¶ 9. An action that alleges "wrongful death arising out of the course of medical, surgical or other professional services" must be "filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered...." Miss.Code Ann. § 15-1-36(2) (Rev.2003). The statute of limitations for Bracey's wrongful death claim, sounding in negligence, began running on November 15, 1999, the date of Palmer's death, and under the statute, ran until November 15, 2001. Bracey originally filed suit on September 17, 2001, but the motion for leave to amend the complaint was not filed until January 8, 2002, which is undisputedly outside the statutorily prescribed period.
¶ 10. To be permissible once the statute of limitations has expired, a motion to amend must be in compliance with Rule 15(c) of the Mississippi Rules of Civil Procedure, which states that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." M.R.C.P. 15(c). However, "the standard for determining whether amendments qualify under Rule 15(c) is not simply an identity of transaction test; although not expressly mentioned in the rule, the courts also inquire into whether the opposing party has been put on notice *213 regarding the claim or defense raised by the amended pleading." 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1497 (2d ed.1990); Parker v. Miss. Game and Fish Comm'n, 555 So.2d 725, 731 (Miss.1989).
¶ 11. Bracey maintains that the denial of her motion to amend was error because the evidence on record clearly satisfies each test. First, asserting that the claim in the amendment does relate back to the date on which the original was filed, Bracey explains that the negligence with which she charges Dr. Sullivan is improper drug prescription, i.e., an ACE inhibitor in the original and allopurinol in the amendment, and therefore, since each drug constitutes an improper prescription, they arise from the same "conduct, transaction, or occurrence." Secondly, Bracey avers that Dr. Sullivan's attorney was served with a copy of the motion for leave to file the amended complaint and, therefore, was put on notice as to the claim. We, however, find that Bracey's argument fails in both respects.
¶ 12. The United States Supreme Court, although in an opinion predating the adoption of the rules of civil procedure, explained the relation back doctrine as follows:
The general rule is that an amendment relates back to the time of the filing of the original petition, so that the running of the statute of limitations against the amendment is arrested thereby. But this rule, from its very reason, applies only to an amendment which does not create a new cause of action. The principle is that, as the running of the statute is interrupted, by the suit and summons, so far as the cause of action then propounded is concerned, it interrupts as to all matters subsequently alleged by way of amendment, which are part thereof. But where the cause of action relied upon in an amendment is different from that originally asserted, the reason of the rule ceases to exist, and hence the rule itself no longer applies.
Union Pac. Ry. Co. v. Wyler, 158 U.S. 285, 296-97, 15 S.Ct. 877, 39 L.Ed. 983 (1895); Accord McKesson & Robbins, Inc. v. Coker, 222 Miss. 774, 779-81, 77 So.2d 302, 304-05 (1955); Illinois Cent. R. Co. v. Wales, 177 Miss. 875, 888-91, 171 So. 536, 539-40 (1937). The "conduct, transaction, or occurrence" test, or identity of transaction test, set forth in Rule 15(c) is utilized to determine whether a claim advanced in an amended pleading creates a new cause of action, and the Mississippi Supreme Court has noted in dicta that the same transaction or occurrence language means that the claims arise from "the same nucleus of common facts." Kiddy v. Lipscomb, 628 So.2d 1355, 1357 (Miss.1993). Bracey's aforementioned argument is unpersuasive because the facts on which she founds her claims of negligence are not common, but merely similar, and therefore, give rise to separate and distinct actions.
¶ 13. The specifics concerning the duration and extent to which Dr. Sullivan treated Palmer are not perfectly clear from the record, but the following discussion includes the pertinent facts that we were able to ascertain and utilize in reaching our decision. Regarding the original complaint, Palmer was apparently suffering from hypertension, or high blood pressure, and, accordingly, visited Dr. Sullivan. ACE inhibitors are used to control blood pressure; however, Bracey alleged that Palmer's medical records, to which Dr. Sullivan had access, indicated that she was allergic to ACE inhibitors. Despite knowing this, Dr. Sullivan, in treating Palmer's hypertension, negligently prescribed for Palmer Vasotec, an ACE inhibitor, and said negligence ultimately caused her *214 death. The facts on which Bracey founds the claim raised in the amended complaint apparently concern Palmer's gout and subsequent treatment by Dr. Sullivan, which she received on an occasion other than when being treated for hypertension. Allopurinol is a medication used to treat gout; however, prescribing allopurinol to a person in renal failure could cause them to develop Stevens-Johnson Syndrome. Bracey alleges that, despite knowing Palmer was in renal failure, Dr. Sullivan, in attending to Palmer's gout, negligently prescribed for Palmer Zyloprim, an allopurinol, and said negligence ultimately caused her death.
¶ 14. Bracey's amended pleadings present "an entirely new and different factual situation[,]" and this factual variance gives rise to "a new and different cause of action." 61B AMERICAN JURISPRUDENCE, PLEADING § 798 (2d ed.1999). The factual underpinnings of each claim averred by Bracey share no relation regarding the ailment for which Palmer received treatment, the time at which Palmer received treatment, or the medication prescribed for Palmer when receiving treatment. The only factual similarities are that Palmer was the alleged victim of medical malpractice founded in negligence and that said negligence allegedly caused Palmer's death. These allegations, however, arise from separate and distinct events. The amended pleading, therefore, "does not arise from the original cause of action" and, consequently, fails the identity of transaction test. 51 AMERICAN JURISPRUDENCE, LIMITATION OF ACTION § 264 (2d ed.2000).
¶ 15. As to the notice criterion, we find Bracey's argument, which is that Dr. Sullivan received proper notification based on the fact his attorney was served with a copy of the motion for leave to file the amended complaint, to be equally unpersuasive. In explaining this requirement, the United States Supreme Court noted that "[t]he rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitation were intended to provide." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 150 n. 3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (citing 3J JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 15.15[3] (2d ed.1984)). Compliance, therefore, requires that the pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
¶ 16. Bracey's original complaint put Dr. Sullivan on notice of possible negligence by him in prescribing ACE inhibitors for Palmer. The amended complaint, however, put Dr. Sullivan on notice of possible negligence by him in prescribing allopurinol for Palmer. These are distinct and separate events; therefore, the initial pleading failed to inform Dr. Sullivan "of litigation concerning a particular occurrence." Id. (emphasis added).
¶ 17. As a result, Bracey failed to meet both the identity of transaction test and the notice requirement, thereby rendering the relation back doctrine of Rule 15(c) inapplicable, so Bracey's amended complaint is barred by the statute of limitations. See Fowler v. City of Seminole, 202 Okla. 635, 636, 217 P.2d 513, 515 (1950). Finding no abuse of discretion by the trial court, we affirm the denial of Bracey's motion to amend.

II.

SUMMARY JUDGMENT
¶ 18. A motion for summary judgment is granted "if the pleadings, depositions, *215 answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c); Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983). Mississippi's appellate courts review grants of summary judgments under a de novo standard and view the evidence in the light most favorable to the non-moving party. Mosby v. Moore, 716 So.2d 551, 558(¶ 35) (Miss. 1998).
¶ 19. Recovery for the negligence alleged requires that Bracey prove by a preponderance of the evidence that (1) Dr. Sullivan had a legal duty, (2) Dr. Sullivan breached that legal duty by failing to conform to the required standard of care, (3) Dr. Sullivan's breach was the proximate cause of injury to Palmer, and (4) damage to Palmer resulted. Phillips ex rel. Phillips v. Hull, 516 So.2d 488, 491 (Miss.1987). However, such "negligence cannot be established without medical testimony that [Dr. Sullivan] failed to use ordinary skill and care." Id. (quoting Cole v. Wiggins, 487 So.2d 203, 205 (Miss.1986)).
¶ 20. Accompanying his motion for summary judgment, Dr. Sullivan submitted the affidavits of Dr. Holland M. Addison and Dr. Todd Adkins, physicians specializing in internal medicine in geriatrics and allergy and immunology, respectively. In both, the affiants declared, upon review of Palmer's medical records, that the appropriate consultations were made throughout Palmer's treatment at the hospital, that each of Palmer's problems was appropriately addressed, that every medication prescribed for Palmer was proper, and that, considering her medical condition, Stevens-Johnson Syndrome is unlikely to have caused her death. Dr. Atkins further stated that determining the cause for Palmer's development of Stevens-Johnson Syndrome is impossible and that no doctor's treatment of Palmer deviated from the standard of care.
¶ 21. Bracey, on the other hand, presented no expert medical testimony to the contrary supporting her claim that Dr. Sullivan negligently prescribed ACE inhibitors for Palmer. Bracey did, however, when responding to Dr. Sullivan's motion for summary judgment, submit the affidavit of Dr. Thomas West, a general surgeon from Tennessee, who declared that Dr. Sullivan deviated from the required standard of care by prescribing allopurinol for Palmer while she was in renal failure. However, in the absence of expert medical testimony supporting the claim of negligence regarding the prescription of ACE inhibitors, as averred in the original complaint, Bracey failed "to bring forward significant probative evidence demonstrating the existence of the triable issue of fact." Credit Center, 444 So.2d at 364 (citing Union Planters Nat'l Leasing, Inc. v. Woods, 687 F.2d 117, 119 (5th Cir.1982)). Consequently, summary judgment for Dr. Sullivan was properly granted.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ. CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.