# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-01274-SCT

*BEDFORD HEALTH PROPERTIES, LLC,*
*HATTIESBURG MEDICAL PARK, INC.,*
*HATTIESBURG MEDICAL PARK MANAGEMENT*
*CORPORATION, MICHAEL E. McELROY, SR., M. E.*
*McELROY, JR., M. E. McELROY, INC., BEDFORD*
*CARE CENTER-MONROE HALL, LLC, BEDFORD*
*CARE CENTER-WARREN HALL, LLC, ROBERT*
*PERRY AND GINA SIMONETTI*

*v.*

*THE ESTATE OF CLIFTON WILLIAMS BY AND*
*THROUGH GRACE HAWTHORNE,*
*ADMINISTRATRIX OF THE ESTATE OF CLIFTON*
*WILLIAMS, FOR THE USE AND BENEFIT OF THE*
*ESTATE OF CLIFTON WILLIAMS, AND FOR THE*
*USE AND BENEFIT OF THE WRONGFUL DEATH*
*BENEFICIARIES OF CLIFTON WILLIAMS*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/07/2005 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | BENJAMIN CONNELL HEINZ |
| | WILLIAM R. LANCASTER |
| | ANDREW CHRISTOPHER CLAUSEN |
| ATTORNEYS FOR APPELLEE: | DOUGLAS BRYANT CHAFFIN |
| | ANTHONY LANCE REINS |
| | KENNETH LUKE CONNOR |
| | SUSAN NICHOLS ESTES |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART; AND REMANDED - 11/02/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.    Grace Hawthorne (Hawthorne), the administratrix of the Estate of Clifton Williams (the Estate), filed suit against numerous defendants on December 13, 2002, in the Circuit Court of Forrest County, Mississippi.    The complaint alleged various claims: negligence; medical malpractice; malice and/or gross negligence; fraud; breach of fiduciary duty; statutory survival claim; and statutory wrongful death.    The named defendants in the original complaint were Bedford Care Center of Hattiesburg, L.L.C.; Bedford Health Properties, L.L.C.; Hattiesburg Medical Park, Inc.; Hattiesburg Medical Park Management Corporation; Nicole M. Bevon; Michael E. McElroy, Sr.; Frances Griffin; Brenda J. Leone; Mike Hatten; John Does 1 through 10; and Unidentified Entities 1 through 10 (as to Conva-Rest of Hattiesburg), (collectively "Original Defendants").

¶2.    Clifton Williams (Williams) had resided in a nursing home in Hattiesburg, Mississippi, from 1993 until December 16, 2001.    In their answers to the complaint, the Original Defendants claimed that Williams had not resided at Conva-Rest of Hattiesburg, but instead

he had resided at Conva-Rest of Northgate located in Hattiesburg, Mississippi.[1]   All Original Defendants filed their answers by February 14, 2003.

¶3.     On July 16, 2003, the Estate filed a motion to substitute parties and leave to amend the complaint.   The motion also dismissed the incorrect Original Defendants.   On August 4, 2003, the trial court dismissed without prejudice Bedford Care Center of Hattiesburg, L.L.C.; Nicole M. Bevon; Frances Griffin; Brenda J. Leone; and Mike Hatten, as defendants.   On May 26, 2004, and July 27, 2004, the court docket indicated that a notice of hearing was scheduled for July 30, 2004.   On August 10, 2004, more than a year after the motion was filed, the trial court granted the Estate leave to file an amended complaint to substitute defendants.

¶4.     The Estate filed the amended complaint on August 26, 2004.   The named defendants in the amended complaint were as follows: Bedford Health Properties, L.L.C.; Hattiesburg Medical Park, Inc.; Hattiesburg Medical Park Management Corporation; Michael E. McElroy, Sr.; M. E. McElroy, Jr.; M. E. McElroy, Inc.; HMP Management; Bedford Care Center - Monroe Hall, L.L.C.;   Bedford Care Center - Warren Hall, L.L.C.; Robert Perry; Gina Simonetti; John Does 3 through 10; and Unidentified Entities 5 through 10 (as to Conva-Rest of Northgate, n/k/a/ Bedford Care Center - Monroe Hall and  Bedford Care Center - Warren

---

[1]    The January 22, 2003, answer filed by Bedford Care Center of Hattiesburg L.L.C.; Hattiesburg Medical Park Inc.; Brenda J. Leone; and Mike Hatten made numerous references that Williams was a resident of Bedford Care Center of Northgate.   The January 22, 2003, answer and motion for more definite statement (as to count five) of defendants, Bedford Health Properties, L.L.C.; Hattiesburg Medical Park Management Corporation; Nicole M. Bevon; and Michael E. McElroy, Sr.,  references that Williams was a resident of Bedford Care Center of Northgate.   The February 14, 2003, answer filed by Frances Griffin also referenced that Williams was a resident of  Bedford Care Center of Northgate.   A series of motions for leave to file amended answers and amended answers filed between April 8, 2003, and April 21, 2003, also referenced Williams' residency at Bedford Care Center of Northgate.

3

Hall)(collectively "Amended Defendants"). Only four Original Defendants were named in both the complaint and the amended complaint, those being, Bedford Health Properties, L.L.C.; Hattiesburg Medical Park, Inc.; Hattiesburg Medical Park Management Corporation; and Michael E. McElroy, Sr. The amended complaint asserted the same eight causes of action as those in the original complaint.

¶5. Thereafter, the Amended Defendants filed a motion for summary judgment claiming that the amended complaint did not relate back to the original complaint pursuant to M.R.C.P. 15(c). Following a hearing, on June 9, 2005, the Circuit Court of Forrest County denied the Amended Defendants' motion for summary judgment and granted certification for interlocutory appeal to this Court. This Court granted the Amended Defendants' petition to bring this interlocutory appeal. *See* M.R.A.P. 5.

**FACTS**

¶6. Williams resided at Conva-Rest of Northgate, n/k/a Bedford Care Center - Monroe Hall and Bedford Care Center - Warren Hall. He lived there from October 22, 1992 until December 16, 2001. Williams died on December 28, 2001. Conva-Rest of Northgate and Conva-Rest of Hattiesburg, n/k/a Bedford Care Center of Hattiesburg, L.L.C., are owned by Bedford Health Properties, L.L.C., and managed by Hattiesburg Medical Park Management Corporation. Michael E. McElroy, Sr., and his son, Michael E. McElroy, Jr., own a large portion of these companies and are involved in a variety of capacities in other companies that own and operate the nursing facilities.

¶7. In her deposition testimony, Hawthorne stated that she was the step-granddaughter of Williams. During the first five years of Williams' residency, Hawthorne visited him

4

approximately four to six times a month. After Hawthorne's grandmother died in 1995, Hawthorne visited Williams approximately four times a month at the nursing home. She also saw Williams at church each week. Hawthorne stated that the name of Williams' wing was Northgate or Warren Hall.

¶8. Hawthorne, as administratrix of the Estate, filed her complaint on December 13, 2002. Later, Hawthorne determined that the incorrect facility and some personnel had been named in the original complaint. The complaint mistakenly named Conva-Rest of Hattiesburg instead of Conva-Rest of Northgate. Both of these facilities are located in Hattiesburg, Mississippi. The Estate filed a motion to dismiss the incorrect original defendants which was granted by the trial court. The Estate petitioned the trial court to amend the complaint and substitute the correct parties pursuant to M.R.C.P. 15. The trial court granted the motion and allowed the Estate thirty days to file the amended complaint. On August 26, 2004, the Estate filed the amended complaint which named the correct nursing facility, owners, managers, and operators. The trial court denied the Amended Defendants' motion for summary judgment. Thereafter, this Court granted the Amended Defendants' petition for interlocutory appeal. On appeal, the Amended Defendants raise the following issues:

I. **Whether the Estate properly substituted a defendant for a fictitious party.**

II. **Whether the Estate's amended complaint relates back to the date the original complaint was filed pursuant to M.R.C.P. 15.**

III. **Whether the Estate's claims are time barred by Miss. Code Ann. § 15-1-36.**

## DISCUSSION

5

¶9. This Court applies a de novo standard of review on appeal from a grant of summary judgment by the trial court. *Russell v. Orr*, 700 So. 2d 619, 622 (Miss. 1997); *Richmond v. Benchmark Constr. Corp.*, 692 So. 2d 60, 61 (Miss. 1997); *Merrimack Mut. Fire Ins. Co., v. McDill*, 674 So. 2d 4, 7 (Miss. 1996); *Northern Elec. Co. v. Phillips*, 660 So. 2d 1278, 1281 (Miss. 1995). Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be granted by a court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law*. M.R.C.P. 56(c) (emphasis added). The moving party has the burden of demonstrating that there is no genuine issue of material fact in existence, while the non-moving party should be given the benefit of every reasonable doubt. *Tucker v. Hinds County*, 558 So. 2d 869, 872 (Miss. 1990). "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." *Id*.

¶10. Of importance here is the language of the rule authorizing summary judgment "where there is no genuine issue of material fact." *Simmons v. Thompson Mach. of Miss., Inc*., 631 So. 2d 798, 801 (Miss. 1994). This Court has stated:

> The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense...the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.

*Simmons*, 631 So. 2d at 801 (citing *Shaw v. Burchfield*, 481 So. 2d 247, 252 (Miss. 1985)). The evidence must be viewed in the light most favorable to the non-moving party. *See Russell*,

700 So. 2d at 622; *Richmond*, 692 So. 2d at 61; *Merrimack Mut. Fire Ins. Co.*, 674 So. 2d at 7; *Northern Electric Co.*, 660 So. 2d at 1281; *Simmons*, 631 So. 2d at 802; *Tucker*, 558 So. 2d at 872.

¶11.   To avoid summary judgment, the non-moving party must establish a genuine issue of material fact within the means allowable under the Rule. *Richmond*, 692 So. 2d at 61 (citing *Lyle v. Mladinich*, 584 So. 2d 397, 398 (Miss. 1991)). "If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise the decision is affirmed." *Richmond*, 692 So. 2d at 61.

### I.      Whether the Estate properly substituted a defendant for a fictitious party.

¶12.    The Amended Defendants argue that the Estate failed to properly substitute the seven new defendants named in the amended complaint for a fictitious party pursuant to M.R.C.P. 9(h).  The Estate argues that the new defendants were not substituted pursuant to M.R.C.P. 9(h) because it met the requirements of M.R.C.P. 15(c).

¶13.   Mississippi Rule of Civil Procedure 9(h) provides:

> (h) Fictitious Parties. When a party is **ignorant of the name of an opposing party and so alleges in his pleading**, the opposing party may be designated by any name, and when his true name is discovered the process and all pleadings and proceedings in the action may be amended by substituting the true name and giving proper notice to the opposing party.

(Emphasis added).  Therefore, a proper amendment pursuant to Rule 9(h) will relate back to the date of the filing of the original complaint.  M.R.C.P. 15(c)(2); M.R.C.P. 9(h).  In *Doe v. Mississippi Blood Services, Inc.*, 704 So. 2d 1016, 1019 (Miss. 1997), this Court held: "The purpose of Rule 9(h) is to provide a mechanism to bring in responsible parties, known, but unidentified, who can only be ascertained through the use of judicial mechanisms such as

7

discovery. It is not designed to allow tardy plaintiffs to sleep on their rights." *See also **Wilner v. White***, 929 So. 2d 315, 322 (Miss. 2006); ***Walker v. Gallagher***, 926 So. 2d 890, 896 (Miss. 2006). "[I]n order for Rule 9(h) to apply, there must be a substitution of a true party name for a fictitious one." ***Walker***, 926 So. 2d at 896. In ***Womble v. Singing River Hosp***., 618 So. 2d 1252 (Miss. 1993), this Court set forth a guideline to determine if a party was "ignorant" of the name of an opposing party pursuant to Rule 9(h).

> It is a principle of general application, though, that ignorance of the opposing party for fictitious party practice extends beyond mere lack of knowledge of the opposing party's name. Even if the plaintiff knows the true name of the person, he is still ignorant of his name if he lacks knowledge of the facts giving him a cause of action against the that person.

***Womble***, 618 So. 2d at 1267. "Rule 9(h) exists for the benefit of a party who is 'ignorant of the name of an opposing party and so alleges in his pleadings.'" ***Wilner,*** 929 So. 2d at 322. This Court has also acknowledged a reasonable diligence test when substituting unknown parties pursuant the M.R.C.P. 9(h). ***Wilner***, 929 So. 2d at 322-23 (citing ***Doe***, 704 So. 2d at 1018-19); *see also **Womble***, 618 So. 2d at 1266-68.

> Reasonable diligence is a standard only for determining the efforts made to discover the true identity of a named fictitious party under Rule 9(h). ***Nguyen v. Mississippi Valley Gas Co.***, 859 So. 2d 971 , 978-79 (Miss. 2002). "The relation back privilege provided for fictitious parties under Rule 15(c)(2) requires the plaintiff to actually exercise a reasonably diligent inquiry into the identity of the fictitious party." ***Doe***, 704 So. 2d at 1019.

***Wilner***, 929 So. 2d at 323. In ***Doe***, this Court found that Doe "merely substituted Mississippi Blood Services, Inc., for a named party, United Blood Services." ***Doe***, 704 So. 2d at 1018. Doe failed to substitute the new defendant for a John Doe defendant. ***Id***. More recently in ***Wilner***, White was added as a new defendant to Wilner's lawsuit. ***Wilner***, 929 So. 2d at 317.

8

Wilner simply added White's name to the amended complaint and failed to substitute White's name for one of four "John Doe" defendants listed in the original complaint. *Id*. at 323. The four "John Does" originally named in the complaint remained as defendants in the amended complaint. *Id*. This Court found that Wilner improperly substituted White as a party pursuant to M.R.C.P. 9 (h). *Id*. Like *Doe*, this Court in *Wilner* also determined that the appellants were not ignorant of the appellees pursuant to M.R.C.P. 9(h), therefore, "Wilner [could] seek no shelter from Rule 9(h), and her amended complaint [could not] relate back under Rule 15(c)(2)." *Id*.

¶14. This Court has interpreted "ignorance" of the opposing party in *Rawson v. Jones*, 816 So. 2d 367, 371 (Miss. 2001). In *Rawson*, this Court held that Jones was not ignorant of the defendants based on her knowledge of the newly added defendants, a doctor and medical group, since the death of her child. *Id*. In *Womble*, the plaintiff did not request the medical records relating to Womble's treatment until almost two years after her death. *Womble*, 618 So. 2d at 1266. The Court found that the plaintiff was not ignorant of the newly added defendants because the plaintiff failed to exercise reasonable diligence in attempting to discover their identities which would have been revealed by the medical records. *Womble*, 618 So. 2d at 1266.

¶15. Here, the Estate filed a motion to substitute parties on July 16, 2003. In the motion, the Estate also requested leave to file an amended complaint and to dismiss some Original Defendants without prejudice. The Estate's motion for substitution stated:

> Plaintiff, pursuant to M.R.C.P. 15, moves to substitute parties [sic] Defendant [sic] and for leave to amend Plaintiff's Complaint in this matter to be in the

9

form of Plaintiff's First Amended Complaint attached hereto as Exhibit "A". Plaintiff's amendments are necessary for the proper trial of all the issues in this matter, and the proposed amendment will not prejudice Defendants. The purpose of this amendment is to substitute Defendants, specifically, M. E. McElroy, Inc., HMP Management, Bedford Care Center - Warren Hall, L.L.C. and Bedford Care Center - Monroe Hall, L.L.C. in place of Unidentified Entities 1-4; and Michael E. McElroy, Jr., Gina Simonetti and Robert Perry in place of John Does 1-3. Plaintiff will dismiss Defendants Bedford Care Center of Hattiesburg, L.L.C., Nicole M. Bevon, Frances Griffin, Brenda J. Leone and Mike Hatten from this action, without prejudice. The Mississippi Supreme Court has held that amendments shall be freely given when justice so requires. *Estes v. Starnes*, 732 So.[]2d 251 (Miss. 1999), citing *Frank v. Dore*, 635 So.[]2d 1369 (Miss. 1994). Thus, Plaintiff respectfully requests this Court to permit the substitution of parties requested herein.

WHEREFORE, Plaintiff requests that this Court grant Plaintiff's motion to substitute M. E. McElroy, Inc., HMP Management, Bedford Care Center - Warrren Hall, L.L.C. and Bedford Care Center - Monroe Hall, L.L.C. in place of Unidentified Entities 1-4, and Michael E. McElroy, Jr., Gina Simonetti and Robert Perry as John Does 1-3 in this action.

As such, the amended complaint failed to properly substitute any defendant for a fictitious party under Rule 9(h). In other words, Rule 9(h) does not apply in this case.

¶16. We find that the motion to substitute clearly shows that the Estate simply substituted one set of **new defendants** for some of the **named parties** in the original complaint much like the facts in *Doe*. The Estate merely substituted M. E. McElroy, Inc.; HMP Management; Bedford Care Center - Warrren Hall, L.L.C.; Bedford Care Center - Monroe Hall, L.L.C.; Michael E. McElroy, Jr.; Gina Simonetti; and Robert Perry for the named parties in the original complaint, Bedford Care Center of Hattiesburg, L.L.C.; Nicole M. Bevon; Frances Griffin; Brenda J. Leone; and Mike Hatten. While the Estate, unlike the facts in *Doe*, replaced the corresponding Unidentified Entities 1-4 and John Does 1-3 with the new defendants, the effect is of no consequence. The Estate agreed to dismiss five Original Defendants named in the

10

original complaint. However, the Estate merely added the seven new defendants under the guise of substituting them for the fictitious party names of Unidentified Entities 1-4 and John Does 1-3. In other words, the Estate sued five **incorrect defendants** in the original complaint. The Estate sought to remedy the problem by dismissing these five Original Defendants and erroneously substituting the new defendants as "fictitious" parties. However, the Estate actually made a blatant change of these five Original Defendants for the seven new defendants, not fictitious parties.

¶17. Further, the deposition testimony taken from Hawthorne indicated that she referred to Williams' place of residency as "Northgate" or "Warren Hall." Hawthorne visited Williams at this location about four to six times a month and saw him many Sundays at church. The church was located across the street from Williams' residence. This testimony indicated that Hawthorne knew Williams resided at "Northgate" or "Warren Hall" and not at the Hattiesburg location.[2] Therefore, the name of the correct nursing care facilities and the corresponding identities of the officers, licensees, and administrators clearly were known to Hawthorne at the time of filing the complaint. The record is not clear concerning whether Hawthorne was able to receive medical or corporate records. The deposition testimony indicated that Hawthorne reviewed some kind of records, but it was not clear exactly what kind of records to which she was referring in her deposition testimony. Clearly, the correct nursing facility and therefore the correct employees were known to Hawthorne.

---

[2]The record reflects that Conva-Rest of Northgate and Conva-Rest of Hattiesburg changed ownership to Bedford Health Properties, L.L.C. on or before April 1, 2001. ConvaRest Northgate then became Bedford Care Center - Warren Hall, L.L.C. and Bedford Care Center - Monroe Hall, L.L.C.

11

¶18. We find that since the amended complaint did not add true fictitious parties, then pursuant to M.R.C.P. 15(c), M.R.C.P. 4(h) controls the time period for service of an amended complaint. M.R.C.P. 4(h) concerns the time limit for service of a summons and provides:

> If a service of the summons and complaint is not made upon a defendant **within 120 days after the filing of the complaint** and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

(Emphasis added). *See also **Walker***, 926 So. 2d at 895 (Walker received no notice within 120 days of filing the complaint and the amended complaint was filed more than two years after original complaint). The record clearly demonstrated that the seven newly added defendants in the amended complaint, those being, M. E. McElroy, Jr.; M. E. McElroy, Inc.; HMP Management; Bedford Care Center - Monroe Hall, L.L.C.; Bedford Care Center - Warren Hall, L.L.C.; Robert Perry; and Gina Simonetti, were not served with the amended complaint within 120 days of filing the original complaint. Indeed, the original complaint was filed on December 13, 2002, and the amended complaint was filed on August 26, 2004. These two events occurred over two and a half years apart, unequivocally outside of the 120 day time frame imposed by M.R.C.P. 4(h). *See **Walker***, 926 So. 2d at 895 Therefore, we must now turn to Rule 15(c) to determine if the Amended Defendants had notice within 120 days of the filing of the original lawsuit.

**II.     Whether the Estate's amended complaint relates back to the date the original complaint was filed pursuant to M.R.C.P. 15(c).**

¶19. Some of the defendants were named in both the original complaint and the amended complaint. Bedford Care Center of Hattiesburg, L.L.C.; Nicole M. Bevon; Frances Griffin;

Brenda J. Leone; and Mike Hatten were named in the original complaint and later dismissed by the trial court. Thus, those five Original Defendants were no longer party to this lawsuit. However, Bedford Health Properties, L.L.C.; Hattiesburg Medical Park, Inc.; Hattiesburg Medical Park Management Corporation; and Michael E. McElroy, Sr., (collectively "the four Original/Amended Defendants") were named in both the original and amended complaints. Therefore, this Court now must consider whether the amended complaint related back to the original complaint as to the seven newly added Amended Defendants and the four Original/Amended Defendants that were named in both the original and amended complaint.

¶20. The Amended Defendants argue that the Estate failed to meet the requirements of Rule 15(c). The Estate contends that even if the substitution via Rule 9(h) is incorrect, then provided the parties had notice and the other elements of Rule 15(c) are met, the amendment is proper.

¶21. Mississippi Rule of Civil Procedure 15(c) provides:

(c) Relation Back of Amendments. Whenever **the claim or defense** asserted in the amended pleading arose out of the **conduct, transaction**, **or occurrence set forth or attempted to be set forth in the** <u>original pleading, the amendment relates back to the date of the original pleading</u>. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by **Rule 4(h) for service of the summons and complaint**, the party to be brought in by amendment:

> (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining the party's defense on the merits, and

> (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. **An amendment pursuant to Rule 9(h) is not an amendment changing the party against whom**

13

**a claim is asserted and such amendment relates back to the date of the original pleading.**

(Emphasis added).

¶22.     In *Ralph Walker, Inc. v. Gallagher*, 926 So. 2d 890, 894-95 (Miss. 2006), this Court described the practical application of Rule 15(c). This Court held:

> [W]hen the amended complaint does change a named defendant, as here, there are two additional requirements: notice and knowledge by the defendant who would be named. *Id*. These two additional requirements must be met within the Rule 4(h) time period, or 120 days of the original complaint. *Brown v. Winn-Dixie Montgomery, Inc.*, 669 So.2d 92, 94 (Miss. 1996) (citing *Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S. Ct. 2379, 91 L. Ed. 2d 18 (1986)). Thus, it is not that one of the requirements of Rule 15(c) is that the amendment change a party; instead, it is that only those amended pleadings which do change a party are the pleadings which have three requirements. To pinpoint the rule as it applies to this case, the three requirements of a complaint that changes a named defendant are: (1) the claim in the amended complaint must arise out of the same conduct, transaction, or occurrence as that set forth in the original complaint; (2) the newly-named defendant must have received notice of the action within the 120 days; and, (3) the newly-named defendant must have or should have known that an action would be brought against him within the 120 days unless a mistake existed as to the parties' identities.

¶23.     The trial court granted leave for the Estate to amend its original complaint. M.R.C.P. 15(a) states, in part "leave shall be freely given when justice so requires." The Amended Defendants assert that the Estate (1) made significant and substantial changes in the conduct, transaction, or occurrences which formed the basis of the claim set forth in the original complaint, and (2) added new parties whose identities were known at the time of the filing of the original complaint. In Issue I, we already determined that the seven new defendants added by the amended complaint were not fictitious parties pursuant to Rule 9(h); therefore, there is no exception of the automatic relation back to the original complaint.

14

¶24. There are two major distinctions between the original complaint and the amended complaint. The place of the alleged injuries and Williams's residence are different in the original complaint and the amended complaint. The original complaint incorrectly cited the place of the alleged injuries and Williams's residence as ConvaRest of Hattiesburg, whereas the amended complaint correctly cited ConvaRest of Northgate as the place of the alleged injuries and Williams's residence. Furthermore, there are a number of changes in the named licensees; administrators; and parties that owned, operated, and/or controlled the two nursing facilities in the amended complaint.

¶25. The comments to M.R.C.P. 15(c) concerning the first test to determine whether an amendment relates back to the original complaint is "whether the amended claim or defense arose from the same 'conduct, transaction, or occurrence' as the original." M.R.C.P. 15(c) cmt. The distinction that the parties make in regard to whether the amended complaint relates back to the original complaint is relatively simple. The Amended Defendants emphasize the words and descriptions in the original and amended complaints. The original complaint incorrectly listed Williams as residing in ConvaRest of Hattiesburg. The place of the alleged injuries also were incorrect in the original complaint. The amended complaint correctly listed Williams as residing at ConvaRest of Northgate. In addition, the Amended Defendants argue that the original complaint contained incorrect names of individual administrators, licensees, and directors. Therefore, the Amended Defendants cite to differences in locations and identities in the original and amended complaints. In contrast, the Estate argues that the claims are based upon the injuries that Williams allegedly suffered while a resident at the nursing facility, not the location.

15

¶26. Both parties cite to numerous cases to demonstrate whether the Estate met the conduct, transaction, or occurrence test of M.R.C.P. 15(c). The Defendants rely on *Parker v. Miss. Game and Fish Comm'n*, 555 So. 2d 725 (Miss. 1989) and *Bracey v. Sullivan*, 899 So. 2d 210 (Miss. Ct. App. 2005). In *Parker*, this Court noted that "the standard for determining whether amendments qualify under Rule 15(c) is not simply an identity of transaction test . . . . the courts also inquire into whether the opposing party had been put on notice regarding the claim or defense raised by the amended pleadings." *Parker*, 555 So. 2d at 731. The amended complaint in *Parker* sought to add a claim of malicious prosecution to the two claims in the original complaint which were false imprisonment and false arrest. *Id*. at 726. This Court found that the plaintiffs failed to meet the identity of transaction test. *Id*. at 731. The Court reasoned that the "conduct, transaction, or occurrence" which gave rise to the false arrest and false imprisonment claims in the original complaint was the arrest. *Id*. The "conduct, transaction, or occurrence" which gave rise to the added malicious prosecution claim in the amended complaint was their prosecution. *Id*. This Court held that the arrest and prosecution were separate and distinct events which failed the identity of transaction test. *Id*. Furthermore, this Court found that there was not proper notice because the original complaint failed to inform of the criminal prosecution. *Id*. Therefore, the Court in *Parker* determined that the amended claim failed the relation back doctrine of M.R.C.P. 15(c). *Id*.

¶27. In *Bracey*, the Court of Appeals likewise found that a proposed amended complaint did not relate back to the original complaint. *Bracey*, 899 So. 2d at 212. Bracey's original complaint was based on a claim of malpractice for prescribing an ACE inhibitor which

16

allegedly caused injury and the death of Addie Mae Palmer. *Id*. Thereafter, Bracey sought to amend the complaint by adding the doctor who prescribed the allopurinal. *Id*. at 213.

¶28. The Court of Appeals found that the original complaint put the doctor on notice of a negligence claim due to prescribing ACE inhibitors, whereas the amended complaint put the doctor on notice of a negligence claim for prescribing allopurinal. *Bracey*, 899 So. 2d at 214. These claims were determined to be separate and distinct events which failed to satisfy the identity of transaction test and failed to inform the doctor of a "particular occurrence." *Id*. The Court of Appeals also determined that the plaintiffs failed to satisfy the notice requirement. *Id*. The Court of Appeals was not persuaded that the doctor received notice based on his attorney receiving a copy of the amended complaint. *Id*. Therefore, the court held that the plaintiffs failed to met the requirements of the relation back doctrine and the amended complaint was barred by the statute of limitations. *Id*.

¶29. The Amended Defendants argue that the case before the Court today falls under the holdings of *Parker* and *Bracey*. However, *Parker* is distinguishable from the facts of this case because the plaintiffs in *Parker* added a new claim. Here, the Estate reasserted the same eight claims in both the original and amended complaints. Accordingly, it did not add a new claim, unlike *Parker*.

¶30. While the decisions of the Court of Appeals are not binding on this Court, the logic supplied by the Court of Appeals in *Bracey* is flawed and not applicable when applied to the case at hand. Here, the Amended Defendants cite *Bracey* in part for the proposition that the "identity of transaction" requires the amended complaint to arise out of "the same nucleus of

17

common facts." ***Bracey***, 899 So. 2d at 213. The Court of Appeals in ***Bracey*** stated: "[T]he Mississippi Supreme Court has noted *in dicta* that the same transaction or occurrence language means that the claims arise from "the same nucleus of common facts." ***Kiddy v. Lipscomb***, 628 So. 2d 1355, 1357 (Miss. 1993)." However, the ***Kiddy*** case concerns Rule 20 joinder and refers to the "same transaction and occurrence" language in Rule 20, not the language of Rule 15(c). Furthermore, this case, unlike joinder cases, has only one plaintiff, the Estate. This is not a situation where various defendants have different products and plaintiffs have different medical histories to consider. Here, the Estate is the sole plaintiff suing corporate entities, named and served with *both* the original complaint and amended complaint, and individuals that are all closely related to the nursing care of Williams. Clearly, this is not a situation at all analogous to joinder. Furthermore, in ***Bracey*** the plaintiff was attempting to add a new malpractice claim. Here, the Estate is not adding new claims as discussed above with ***Parker*** and now ***Bracey***.

¶31. In their reply brief, the Amended Defendants also cite ***Illinois Central Railroad Co., v. Adams***, 922 So. 2d 787, 790 (Miss. 2006), for the minimum pleadings requirements. In ***Adams***, a plaintiff claimed exposure to hazardous materials at the Railroad's yards, shops, and other facilities. This Court held: "[A]t a minimum, a complaint must identify a litigable event which entitles the particular plaintiff to recover. That is to say, the complaint must disclose, in general terms, what each defendant did wrong to each plaintiff, and when and where the alleged wrong took place." *Id*. The plaintiff failed to stated where the yards, shops, and other

18

facilities were located. Here, the Estate gave the required information but made a mistake in the location.

¶32. The Estate, on the other hand, argues that this Court's holdings in *Estes* and *Womble* are applicable to this case. In *Estes*, the plaintiff filed against Donald Starnes suit for injuries resulting from a car accident. *Estes v. Starnes*, 732 So. 2d 251, 252-53 (Miss. 1999). More than three years after the accident, Estes sought to amend her complaint to name David Starnes, Donald's son, as the driver of the vehicle that hit her. *Id*. at 253. The trial court denied the motion to amend the complaint. *Id*. This Court held that the trial court erred by denying Estes's motion to amend the complaint. *Id*. We held that David and Donald had notice of the action because of Estes's negotiations with the Starnes's insurance company and the suit filed against Donald. *Id*. The Starnes also knew or should have known that David was the correct party to Estes's suit even though Estes's named the incorrect person, Donald. *Id*. Further, this Court found that there was no prejudice because Donald had legal representation since the suit began in 1994. *Id*.

¶33. In *Womble*, the plaintiff sought to amend the complaint to add some doctors and an emergency group. *Womble*, 618 So. 2d at 1265. Womble died on April 11, 1986, and suit was filed on March 28, 1988. *Id*. at 1268. The trial court granted summary judgment in the defendants' favor because Dr. Longmire and Dr. Weatherall were added more than two years and eight months after Womble's death. *Id*. at 1265. Another defendant, Dr. Calhoun, was added three years and seven months later. *Id* at 1266.

¶34. This Court held that pursuant to M.R.C.P. 15(c) the summary judgment was proper as to Dr. Longmire and Dr. Weatherall. *Womble*, 618 So. 2d at 1268. The Court reasoned that the insurance carrier for these two doctors sent correspondence to a lawyer retained to represent them on April 20, 1988. *Id*. at 1267. The doctors received copies of the correspondence and met with the lawyer. *Id*. at 1267-68.

¶35. This Court concluded that Dr. Longmire and Dr. Weatherall had notice of the suit and knew or should have known that they would have been included in the lawsuit. This Court also reversed the grant of summary judgment in favor of Emergency Room Group, Ltd. *Womble*, 618 So. 2d at 1268. While Dr. Longmire and Dr. Weatherall were officers of the corporation in 1989, the annual report did not indicate the time period covered by the report. *Id*. The records did not indicate that the doctors were on the board at the time of their notice of Womble's lawsuit. *Id*. Therefore, this Court held that there was a question as to the roles of the two doctors at the time that they acquired notice of the lawsuit. *Id*. As for Dr. Calhoun, this Court held that there was no indication that he "possessed awareness" that he would have been included in the lawsuit and affirmed the summary judgment for only him. *Id*.

¶36. As for the cases cited by the Estate, the original suit in *Estes* was filed in 1994 and the original suit was in *Womble* was filed in 1988. A 1998 advisory committee historical note for M.R.C.P. 15 states "[e]ffective July 1, 1998, Rule 15(c) was amended to state that the relation back period includes the time period permitted for service of process under Rule 4(h)." M.R.C.P. 4(h) provides for 120 days service of a summons and complaint. *Estes* was decided in 1999 and *Womble* in 1993; however, the 1998 advisory note was not applicable

20

because the plaintiffs in *Estes* and *Womble* filed the complaints in 1994 and 1988, prior to the 1998 change in the rules. Today, the issue of newly added defendants in *Estes* and *Womble* would fail because M.R.C.P. 15(c) imposes the time limitations of 120 days for service and summons pursuant to M.R.C.P. 4(h) as the time period within which a newly added defendant must have notice of the filing of the original complaint. *See Walker*, 926 So. 2d at 895. However, we are left with this Court's reasoning as to the notice requirements pursuant to M.R.C.P. 15(c)(1) and (2).

¶37. The Amended Defendants assert that the Estate failed to meet the initial requirement of Rule 15(c) that **the claim** asserted in the amended pleading arose out of the **conduct, transaction**, **or occurrence set forth or attempted to be set forth in the original pleading**. We disagree. They argue that the original complaint and the amended complaint rely on two different factual basis for the claims. The original complaint stated:

1. Williams resided at Conva-Rest of Hattiesburg located at 10 Medical Boulevard, Hattiesburg, Forrest County, Mississippi;
2. Nicole M. Bevon and Michael E. McElroy, Sr. were licensees of ConvaRest of Hattiesburg;
3. Frances Griffin, Brenda J. Leone, Michael E. McElroy, Sr., and Mike Hatten were all administrators of ConvaRest of Hattiesburg;
4. The defendants, including the fictitious parties, owned, operated and/or controlled ConvaRest of Hattiesburg; and
5. The eight claims in the complaint arose out of the care and treatment of Williams at ConvaRest of Hattiesburg.

On the other hand, the amended complaint contained the following information:

1. Williams resided at ConvaRest of Northgate located at 298 and 300 Cahal Street, Hattiesburg, Forrest County, Mississippi;
2. Michael E. McElroy, Jr. was the licensee of ConvaRest of Northgate;
3. Michael E. McElroy, Sr., Robert Perry and Gina Simonetti were all administrators of ConvaRest of Northgate;

4. The defendants, including the fictitious parties, owned, operated and/or controlled ConvaRest of Northgate; and

5. The eight claims in the amended complaint arose out of the care and treatment of Williams at ConvaRest of Northgate.

¶38. The original complaint and amended complaint had the same wording as to the conduct asserted in the eight claims of (1) negligence by the corporations and licensees, (2) negligence by the administrators, (3) medical malpractice, (4) malice and/or gross negligence, (5) fraud, (6) breach of fiduciary duty, (7) statutory survival claim, and (8) statutory wrongful death claim. A few of the names of the personnel and the location of the injuries were changed as reflected in the above comparison of the original and amended complaint, but the conduct was the same in both documents

¶39. We first will address the four Original/Amended Defendants that were named in both the original complaint and the amended complaint, those being, Bedford Health Properties, L.L.C.; Hattiesburg Medical Park, Inc.; Hattiesburg Medical Park Management Corporation; and Michael E. McElroy, Sr. We find that the facts of this case are unique and merit close review. **First**, as stated above these four defendants were named in the original and amended complaints. **Second**, one of the corporate entities, Bedford Health Properties, L.L.C., owned both ConvaRest of Hattiesburg and ConvaRest of Northgate. **Third**, Michael E. McElroy, Sr., had 26% ownership interest in Bedford Health Properties, L.L.C, which owned ConvaRest of Hattiesburg and ConvaRest-Northgate. **Fourth**, in addition to his ownership interest, Michael E. McElroy, Sr., was served both the original and amended complaint in his capacity as licensee of ConvaRest of Hattiesburg and administrator of ConvaRest - Northgate. **Fifth**, Michael E. McElroy, Sr. and Jr., were the registered agents for all the corporate entities served in the

22

original complaint and amended complaint. **Sixth**, defense counsel was the same for all the Original Defendants and the Amended Defendants. **Seventh**, the corporate entities all have the same address. **Finally**, while the same corporate counsel may not be a decisive factor, it imparts more weight here because of all the other intertwined relationships in this case.

¶40. Notwithstanding the unique circumstances of this case, the four Original/Amended Defendants knew that there was simply a mistake in the location and corresponding personnel of the Estate's claims. In fact, the defendants pointed out the incorrect location of the nursing home to the Estate in their answers. Furthermore, the injuries alleged to be suffered by Williams were the same, and the same eight claims stated in the amended complaint were stated in the original complaint. No new claim was added to the amended complaint.

¶41. Mississippi is a notice pleading state. *Estate of Stevens v. Wetzel*, 762 So. 2d 293, 295 (Miss. 2000). M.R.C.P. 8 governs general pleadings. The Court in *Wetzel* held:

> While M.R.C.P. 8 has eliminated the technical forms of pleadings required in years past, notice pleadings are still required to place the opposing party on notice of the claim being asserted. No magic words are required by the Rules of Civil Procedure; however, this Court has previously stated:
>
>> Under Rule 8 of the Mississippi Rules of Civil Procedure, it is only necessary that the pleadings provide sufficient notice to the defendant of the claims and grounds upon which relief which is sought.

*Wetzel*, 762 So. 2d at 295.

¶42. The Estate did not change the amended complaint to add a new claim. The premise of the lawsuit, to sue the owners, managers, and operators of a nursing facility for injuries suffered by Williams, remained the same.

23

¶43. The Amended Defendants argue that the amended complaint failed to meet an identity of transaction because the amended claims did not arise from the same nucleus of common facts. As discussed, the cases relied on by the Amended Defendants are distinguishable from the case at hand. Unlike those cases which concerned a significant change in the pleadings by adding a new claim, the Estate did not change the eight claims stated in the original complaint. Importantly, Bedford Health Properties, L.L.C., owned both ConvaRest of Hattiesburg and ConvaRest of Northgate. Also, Michael E. McElroy, Sr., one of the original named defendants, was an administrator of ConvaRest - Northgate and a licensee of ConvaRest of Hattiesburg. In addition, the four Original/Amended Defendants had notice of the lawsuit because they were named and served the original complaint. The Estate was made aware of the error by the Original Defendants which included the four Original/Amended Defendants. Furthermore, all the Original Defendants and Amended Defendants used the same defense counsel for their representation. As such, there has been continuous legal representation.

¶44. We find that as to the four Original/Amended Defendants, the amended complaint relates back to the date of the original complaint. These four Original/Amended Defendants were party to both the original and amended complaints. We find that the trial court correctly determined that the amended complaint related back to these four Original/Amended Defendants and properly allowed the amendment as to these four Original/Amended Defendants. We also find that the conduct, transaction, or occurrence test of Rule 15(c) is satisfied. We find that the change in location from ConvaRest of Hattiesburg to ConvaRest Northgate met Rule 15(c).

¶45.    This Court now turns to the seven newly added Amended Defendants and whether these individuals and entities had notice of the original lawsuit pursuant to Rule 15(c)(1) and (2). These newly added Amended Defendants were M. E. McElroy, Inc.; HMP Management; Bedford Care Center - Monroe Hall, L.L.C.;  Bedford Care Center - Warren Hall, L.L.C.; Michael McElroy, Jr.; Robert Perry; and Gina Simonetti.

¶46.    This Court's analysis in ***Walker***, is applicable to the facts before us today. When analyzing Rule 15(c)(1) and (2) "the newly-named defendant must have received notice of the action within the 120 days; and, [] the newly-named defendant must have or should have known that an action would be brought against him within the 120 days unless a mistake existed as to the parties' identities." ***Walker***, 926 So. 2d at 894-95.  Therefore, the newly added defendants had to have **notice, not service of process**, of the lawsuit within 120 days of filing the original complaint.

¶47.    This Court recently addressed the application of the notice requirement of Rule 15(c) in ***Walker***.   That case involved a collision between a vehicle, driven by Gallagher, and a eighteen-wheeler tractor and trailer rig.  ***Walker***, 926 So. 2d at 892.  The driver of the tractor truck, Anders, allegedly ran a red light and struck Gallagher's vehicle. ***Id***.  Anders, Randy Hunt, and Randy Hunt Trucking, Inc., the owner of the eighteen-wheeler, were sued within the three year statute of limitations by Gallagher. ***Id***.  During the discovery process, Gallagher learned that Ralph Walker, Inc. (Walker), owed the trailer rig that was involved in the collision. ***Id***. Anders was delivering a load to Walker's business at the time of the accident. ***Id***.  In addition, Anders was hauling loads pursuant to Walker's directions during this time period. ***Id***.   Walker

also had an agreement with Randy Hunt Trucking, Inc., to be in charge of dispatching the eighteen-wheeler driven by Anders. *Id*.

¶48. Once Gallagher learned of Walker's existence, he filed an amended complaint to add Walker, almost five years after the collision, to the lawsuit. *Id*. The circuit court granted leave to file the amended complaint and denied Walker's subsequent motion to dismiss for failure to file within the statute of limitations. *Id*. This Court reversed the circuit court's decision to deny the motion to dismiss, and rendered judgment in favor of Walker. *Id*.

¶49. After analyzing whether Walker received notice of the lawsuit and whether Walker knew or should have known that a lawsuit would have been brought against him by Gallagher pursuant to Rule 15 (c)(1) and (2), this Court found that Walker did not have notice or knowledge of the lawsuit being filed within 120 days of the filing of the original complaint. *Walker*, 926 So. 2d at 897.

¶50. To reach that decision, this Court first considered Rule 15(c)(1). This Court determined that Walker received "no formal notice" of the lawsuit between the filing of the complaint on March 21, 2002, and April 2004, when he was named as a defendant in the action. *Id*. at 895. In fact, this Court found that Gallagher "offer[ed] no proof of evidence outside of **speculative theories** that Walker had sufficient notice to meet the requirements of Rule 15(c)(1)." *Id*. (Emphasis added). This Court further held: "No proof has been presented of any notice to Walker whatsoever within the 120 days after the original complaint was filed, and we cannot assume Walker had notice sufficient to satisfy the rule based solely on speculation." *Id.* at 895-96.

¶51. This Court then determined that Gallagher failed to meet the requirements of Rule 15(c)(2). The purpose of the second prong of Rule 15(c) "is to allow some leeway to a party who made a mistake, so long as the party does what is required within the time period under the rule." *Walker*, 926 So. 2d at 896. Gallagher argued numerous reasons why Walker knew or should have known of the lawsuit within 120 days of its filing, such as, damage to the trailer from the collision, a delay in the delivery on the day of the collision, possible insurance claims, the business relationship between Walker and the other defendants, and a reasonable person should assume litigation would result from a collision between an eighteen-wheeler and a car. *Id*. This Court found that Gallagher's arguments were **"assumptions"** and held:

> None of [Gallagher's] theories convince us that Walker knew, or should have known, within 120 days of the complaint, a lawsuit existed. Gallagher makes many great leaps in his reasoning, relying almost entirely on assumptions. The litigation here did not begin until almost three years after the accident, and **the existence of damage to Walker's trailer is simply insufficient to prove Walker's knowledge of litigation**. **A delay in delivery and the existence of a business relationship also do not automatically rise to the level or putting Walker on notice of the existence of a lawsuit**, particularly when Walker was not brought into the proceedings until almost two years after the complaint was filed.

*Id*. Therefore, this Court found that the damage to Walker's trailer, a delay in the delivery on the date of the collision to Walker's business, and the business relationship between Walker and the other defendants was **insufficient** notice to Walker of the filing of the lawsuit.

¶52. Here, Williams died on December 28, 2002. The original complaint was filed on December 13, 2002. The Original Defendants all filed their answers no later than February 14, 2003. In their answers, the Defendants stated that Williams resided at Conva-Rest of Northgate and not Conva-Rest of Hattiesburg. On July 16, 2003, the Estate filed a motion to

27

substitute and leave to amend the complaint. A draft amended complaint was attached to the motion. The trial court granted leave to file the amended complaint on August 10, 2004. The Estate filed the amended complaint on August 26, 2004. Therefore, the amended complaint was filed outside the 120 day time period provided in Rule 4(h). At the summary judgment hearing and on appeal, the Estate argued that the Defendants had notice of the lawsuit. There was no distinction made between the four original/Amended Defendants and the seven newly added Amended Defendants. The Amended Defendants argued that the events that prompted the filing of the amended complaint did not arise out of the same conduct, transaction, or occurrence. In addition, the Amended Defendants argued that there was no mistake in the identities of the newly added Defendants because Hawthorne knew the names of the correct Defendants.

¶53. As in *Walker*, we find that there is no proof pursuant to Rule 15(c)(1) that **all** of the seven newly-added Amended Defendants had formal notice of the lawsuit between the filing of the original complaint on December 13, 2002, and the filing of the amended complaint in August 2005.

¶54. We find that as to Bedford Care Center - Monroe Hall, L.L.C.; Bedford Care Center - Warren Hall, L.L.C.; M. E. McElroy, Inc.; HMP Management[3]; and Michael McElroy, Jr., these five newly added Amended Defendants had notice of the lawsuit within 120 days of the filing of the original complaint. Michael McElroy, Jr., was the registered agent for service of

---

[3] The record reflects that no answer was made by HMP Management. There are answers from Hattiesburg Medical Park Management Corporation and Hattiesburg Medical Park, Inc. Neither party asserts that HMP Management is actually the same company as either Hattiesburg Medical Park Management Corporation or Hattiesburg Medical Park, Inc., therefore, HMP Management will be treated by this Court as a separate legal entity.

process for Bedford Health Properties, L.L.C., named in the original complaint and, therefore, would have had knowledge of the original complaint. He also had a 24.5% interest in Bedford Health Properties, L.L.C. His father, Michael McElroy, Sr., had a 26% ownership interest in Bedford Health Properties, Inc. Furthermore, Bedford Care Center - Monroe Hall and Bedford Care Center- Warren Hall were wholly owned by Bedford Health Properties, Inc., and have knowledge of the original complaint by way of its corporate relationship.

¶55. As to M. E. McElroy, Inc., and HMP Management, both these companies had the same corporate address as the other properly noticed corporate Amended Defendants. In addition, the record indicates that M. E. McElroy, Inc., and HMP Management operated and managed ConvaRest of Northgate, respectively, until at least March 31, 2001. Michael McElroy, Sr., was president of M. E. McElroy, Inc., had 100% ownership of ConvaRest of Northgate and had 100% ownership of HMP Management at that time. Also, the record indicates that M. E. McElroy, Inc., d/b/a ConvaRest of Northgate, owned the facility in question for some period of time prior to April 2001.

¶56. As to Robert Perry and Gina Simonetti, there is no proof that these individuals would have known of the lawsuit within 120 days of filing the complaint. The record provides no proof that Perry and Simonetti were notified by any of the other Original or Amended Defendants that the lawsuit existed. While it is highly likely that a current administrator like Perry would be informed of litigation concerning a former resident, there is absolutely no proof in the record to demonstrate notice beyond pure speculation and assumption. As a former administrator, Simonetti may have been informed of the litigation. However, there also is no proof of notice in the record beyond speculation. Again, to determine that these newly

29

added Amended Defendants had notice within 120 days of the filing of the complaint would amount to pure speculation on the part of this Court. This is in line with the logic of *Walker.* In *Walker*, this Court found no notice or constructive notice to Walker, even though, Walker's trailer was damaged in the collision and Anders was delivering goods to Walker at the time of the collision. Furthermore, Anders was in effect working for Walker at the time of the collision since Walker had a business relationship with Hunt Trucking, Inc., and Walker was in charge of dispatching Anders for trucking jobs. This Court could have easily found that Walker had notice or constructive notice of the lawsuit based on the facts and the strong ties between Walker and the other defendants. In addition, Rule 15(c)(1) and (2) does not address the notice requirement in terms of constructive notice.

¶57. As for Rule 15(c)(2), the Estate argues that the "Defendants" knew or should have known that but for a mistake in identity an action would have been brought against them. The Estate bases its argument on the assertion that the "Defendants" stated in their answers that Williams was a resident of ConvaRest of Northgate and not a resident of ConvaRest of Hattiesburg. While this assertion is true of the four Original Defendants, the seven newly added Amended Defendants were not served with process at that point and therefore, made no answer to that effect.[4] As for Bedford Care Center - Warren Hall; Bedford Care Center - Monroe Hall; Michael McElroy, Jr.; M. E. McElroy, Inc.; and HMP Management, they knew or should have known but for the mistake of the Estate that they would have been named as the correct parties to the lawsuit. Michael McElroy, Jr., was on notice as the registered agent for

---

[4] The seven newly added Amended Defendants have answered the Amended Complaint, except HMP Management as noted in footnote 3.

30

some of the Original Defendants, his father was an registered agent for some of the corporations and was served with process individually. Both men had ownership interests in the nursing homes, both men held offices in some of the newly added corporations, and Michael McElroy, Sr., owned HMP Management. As for the other two Amended Defendants, Perry and Simonetti, we have already determined that they did not meet the requirement of Rule 15(c)(1), therefore, we do not need to address them further.

¶58. Accordingly, we find that Bedford Care Center - Warren Hall; Bedford Care Center - Monroe Hall; Michael McElroy, Jr.; M. E. McElroy, Inc.; and HMP Management met the requirements of Rule 15 (c)(1) and (2) and were correctly added Amended Defendants. However, we find that Robert Perry and Gina Simonetti failed to meet the requirements of Rule 15 (c)(1) and (2) and were not correctly added Amended Defendants.

### III. Statute of Limitations

¶59. The Amended Defendants also raise an issue of statute of limitations in regard to the amended complaint. However, as stated in Issue II, the trial court did not err by allowing the amended complaint solely as to the four Original/Amended Defendants and five of the Amended Defendants. As such, the four Original/Amended Defendants and five Amended Defendants remain. Based on the discussion in Issue II, the amendment as to the four Original/Amended Defendants and the five Amended Defendants related back to the original complaint pursuant to M.R.C.P. 15(c). Accordingly, the amended complaint was not barred by the statute of limitations.

### CONCLUSION

31

¶60.    For the foregoing reasons, the judgment of the Forrest County Circuit Court is affirmed in part and reversed in part, and this case is remanded to the circuit court for further proceedings consistent with this opinion.  The Circuit Court of Forrest County is affirmed as to its finding that the amended complaint relates back to the four Original/Amended Defendants, those being, Bedford Health Properties, L.L.C.; Hattiesburg Medical Park, Inc.; Hattiesburg Medical Park Management Corporation; and Michael McElroy, Sr.  The Circuit Court of Forrest County also is affirmed as to its finding that the amended complaint relates back to five of the newly added Amended Defendants, those being, M. E. McElroy, Inc.; HMP Management; Bedford Health Care - Monroe Hall, L.L.C.; Bedford Health Care - Warren Hall. L.L.C.; and Michael McElroy, Jr.  The Circuit Court of Forrest County is reversed as to its finding that the amended complaint relates back to Robert Perry and Gina Simonetti. Therefore, as to the four Original/Amended Defendants and five of the newly added Amended Defendants, the case is remanded to the Circuit Court of Forrest County for further proceedings consistent with this opinion.

¶61.    **AFFIRMED IN PART; REVERSED IN PART; AND REMANDED**.

        **SMITH, C.J., WALLER, P.J., CARLSON AND DICKINSON, JJ., CONCUR. COBB, P.J., AND GRAVES, J., CONCUR IN PART AND DISSENT IN PART WITHOUT WRITTEN OPINION.  DIAZ, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  RANDOLPH, J., NOT PARTICIPATING.**